## HUGHES TOOL CO. v. NATIONAL LABOR RELATIONS BOARD.

### No. 11071.

Circuit Court of Appeals, Fifth Circuit.

Jan. 22, 1945.

Rehearing Denied March 14, 1945.

Robert H. Kelley and W. M. Streetman, both of Houston, Tex., for petitioner.

Alvin J. Rockwell, Gen. Counsel, Malcolm F. Halliday, Associate Gen. Counsel, and Ivar Peterson, Asst. Gen. Counsel, National Labor Relations Board, all of Washington, D. C., for respondent.

Arthur J. Mandell, of Houston, Tex., for intervener United Steelworkers of America.

Tom M. Davis, of Houston, Tex., for intervener Independent Metal Workers Union, etc.

Before SIBLEY, WALLER, and LEE, Circuit Judges.

SIBLEY, Circuit Judge.

This case, presenting no question of fact, asks whether the adjustment of individual grievances is the exclusive function of the bargaining representative under the National Labor Relations Act, 29 U.S.C.A. § 151 et seq.; and what if any relationship the deduction of union dues bears to the exclusive rights of the bargaining representative.

Employees of the Hughes Tool Company in the bargaining units here involved belong in part to the Independent Metal Workers Union, in part to United Steelworkers of America (C.I.O.) and in lesser part to an affiliate of American Federation of Labor. For many years past it has been the Company's practice on the written request of individual employees to deduct their union dues from their wages and pay them over to their union. On Nov. 13, 1941, the National Labor Relations Board certified the Independent as the bargaining representative in the main plant. The collective agreement then made contained an agreement by the Company to deduct the dues of the Independent's members upon their several written authorizations. The Company at the same time, over an objection made by Independent, made a similar agreement with the Steelworkers as to their members. Individual grievances were adjusted with the individuals or with representatives of their several unions. On December 26, 1942, the Steelworkers won an election and were certified as the bargaining representative; and on January 6, 1943, in meeting with the Company requested that the Company cease making deductions of dues for the members of the Independent; that no grievances be disposed of until the Steelworkers were called in, and that no grievance be handled which was brought in by the Independent on behalf of any of Independent's members. These requests the Company by a letter said it could not grant. Thereafter the Steelworkers made with the Company a collective agreement in which a system of handling grievances was set up, mainly through a grievance committee appointed by the Steelworkers. The collective agreement on the matter of dues provided: "The Company shall continue, in accordance with present practice, to deduct the sum of $1.00 each month for membership dues from members of Locals 1742 and 2457, United Steelworkers of America." The Company continued to deduct dues also for the other unions on request of members, and to handle individual grievances as before for the members of the other unions, over objection of the Steelworkers. The Steelworkers were also certified as bargaining representative in a new plant, where the same practices and protests exist, though no collective contract had been signed at the date of the hearing. On the Steelworkers' complaint the Board had a hearing. The Company's public relations director was called as the only witness, and he made it clear that the Company's policy was one of strict impartiality, that all dues deductions were made, as they always had been, on the written request of individual employees; that grievances were handled otherwise than through the bargaining representative because of the proviso in Sec. 9(a) of the Act, and that when the Independent was bargaining agent, as well as now since the Steelworkers are such, the representative's exclusive right to bargain was carefully observed, and when in a

grievance adjustment any question arose involving a construction of the contract the bargaining agent was always consulted. Otherwise, except on two occasions while the Independent was bargaining agent, the contract was never in a grievance adjustment suffered to be interpreted, added to or taken from. Since the Steelworkers have become the bargaining agent, the presentation of grievances has been held within this same scope. There is no evidence to the contrary. There was an offer of proof by the Company and the Independent, which had intervened, that it was the policy of the Steelworkers to refuse to handle the grievances of the members of the Independent, and that on a number of occasions when it had appeared that the grievance presented by the Steelworkers' committee was in behalf of members of the Independent, the committee had dropped it; and that on January 30, 1944, a circular was distributed, signed by the President of Local 1742 of the Steelworkers, urging the men to join that union "because the committee and the international union will handle your grievances only if you are members." This proof was rejected as immaterial.

The Board held that deduction of dues for the members of the Independent, and the handling of grievances without calling in the Steelworkers, and the permitting the Independent to represent its members in the adjustment of their grievances were acts in derogation of the Steelworkers' exclusive right to bargain and an unfair labor practice, and ordered the Company to cease and desist and post specified notices. The Company petitions to set aside the order. The Board prays its enforcement. The Independent and the Steelworkers' have intervened respectively to attack and support the order. The case is mostly one between rival unions. The questions raised are novel.

The avowed object of the National Labor Relations Act is to protect commerce by establishing and preserving for employees a right of collective bargaining through a representative of their choosing. By Section 2(4) (5), 29 U.S.C.A. § 152(4) (5), the representative may be an individual or a labor organization, and the labor organization may be of any kind, or any agency, or employee committee or plan in which employees participate, for the purpose "of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work." The representative, whether an individual, a committee, or a "union," has its powers and privileges defined in Section 9(a), 29 U.S.C.A. 159(a), thus: "Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: Provided that any individual employee or group of employees shall have the right at any time to present grievances to their employer." Taking the quoted provisions together, it is plain that collective bargaining in respect to rates of pay, wages, hours of employment and other conditions of employment which will fix for the future the rules of the employment for everyone in the unit, is distinguished from "grievances," which are usually the claims of individuals or small groups that their rights under the collective bargain have not been respected.[1] These claims may involve no question of the meaning

[1] To support the idea that grievance and collective bargaining are the same thing, the Board quotes this court, Humble Oil and Refining Co. v. National Labor Relations Board, 113 F.2d 85, 87, as saying: "So long as a majority of the employees in each plant freely choose to belong to or be represented by the Federations they are the bargaining representatives and the contracts they make cannot be ignored. Minority groups may separately present their grievances, but must submit to bargain through the majority representatives." Grievances were not confused with bargaining, but were contrasted. This court very plainly indicated its view that the collective bargain was one thing, and the personal grievance arising under it another thing, in Moore v. Illinois Central R. Co., 5 Cir., 112 F.2d 959. The cases cited by the Board from the Supreme Court, J. I. Case v. National Labor Relations Board, 321 U.S. 332, 64 S.Ct. 576; Railroad Telegraphers v. Railway Express Co., 321 U. S. 342; and Medo-Photo Supply Corporation v. National Labor Relations Board, 321 U.S. 678, 64 S.Ct. 830; all deal with making contracts, not with adjusting grievances. They hold there can be no contracts made except through the bargaining

and scope of the bargain, but only some question of fact or conduct peculiar to the employee, not affecting the unit. They may, however, raise a question of the meaning of the contract, or present a situation not covered by the contract touching which an agreement ought to be made. In the latter cases it is plain that the representative ought to participate, for bargaining, rather than the mere decision of a case according to the contract, is involved. Attention to grievances is therefore mentioned in Section 2(5) as part of the business of the representative, but Section 9(a) does not give him the *exclusive* right to handle them unless they really involve a bargaining for the unit, or an interpretation of the bargain. On the contrary, it expressly gives each employee or group of employees the right to present their own grievances to the employer. The purpose is to preserve in each employee as a right this direct approach to the employer to secure full consideration of his case.[2] The trial examiner seems to have considered that the word "present" means no more than to call attention to the grievance, and that all prosecution of it must be by the representative. We understand the Board to disagree with this interpretation, and to hold that individuals and groups may, under the statute, fully prosecute their grievances through all stages and appeals. The Board is right. No one would think a case in court was "presented" by merely filing it. A presentation of it would include the taking of evidence, the making of argument, and all things necessary to its full understanding.

But the Board thought that this right did not include a presentation of the grievance through a union not the bargaining representative, and did not exclude the latter, who ought on its request to be admitted to the hearing to see if any grievance was in fact an individual one, or involved the sufficiency or interpretation of the collective contract. Again we agree with the Board in principle. When the proviso to Section 9(a) was before Congress it was proposed to add to it the words, "through representatives of their own choosing." The words were not added, apparently because they would include other unions. It was not thought good to allow grievance hearings to become clashes between rival unions. We think an inexperienced or ignorant griever can ask a more experienced friend to assist him, but he cannot present his grievance through any union except the representative. On the other hand, the representative, when not asked to present the grievance, but is attending to safeguard the collective bargaining, cannot exclude the griever, and withdraw his grievance or destroy it by not permitting its consideration.

We take it to be a proper matter for collective bargaining to establish an orderly and just method for presenting and adjusting grievances. This was done in the collective contract made with the Steelworkers. According to it, an employee, feeling aggrieved, may take the matter up directly with his foreman, with or without the presence of a member of the Steelworkers grievance committee as he may elect. There would be no impropriety under this provision in thus disposing of grievances without the presence of the bargaining representative, for it has been waived. Such decisions by a mere foreman would not be of general importance. If the grievance is presented to the committee, it is made its duty to investigate it, and if found meritorious to present it to the foreman, and on an unsatisfactory decision an appeal is to be taken to the general foreman, and on up to the manager. The procedure provision concludes: "Whenever the Union so desires, it may have present any of its representatives during any of the proceedings above set out in this article". This recognizes and emphasizes the privilege of the bargaining representative to be present at the settlement of grievances. The procedure provided in the contract, including appeals, seems capable of application whether the

representative. They say nothing on the subject of personal grievances. In Steele v. Louisville and Nashville R. R. Co., 65 S.Ct. 226, the Supreme Court twice likened the collective bargaining to legislation. Grievances similarly resemble cases to be decided according to the law.

[2] That Congress intended to preserve the right of employees to confer with the employer is further evidenced by the proviso in Section 8(2): "Subject to rules and regulations made and published by the Board pursuant to section 6 an employer shall not be prohibited from permitting employees to confer with him during working hours without loss of time or pay."

employee is handling his own grievance or whether the grievance committee is handling it for him.

We find no evidence that there has been any refusal by the Company to comply with any particular bargaining request of the Steelworkers made since the collective bargain in connection with the old plant, or in connection with the new plant for which no bargain had been made. Permitting the rival union to present grievances of its members we have held to be not intended by the Act, but it can hardly be called a refusal to bargain, unless the representative, in a grievance which really called for bargaining rather than mere decision, had offered to bargain but was refused. It is only by a great strain that the mere omission to notify the representative of the pendency of grievances of sorts which the employer considers, and so far as is shown correctly considers, to involve no interpretation or change of the collective contract, can be called a refusal to bargain. The order ought to be merely that the Company cease and desist from adjusting grievances through the Independent, and from adjusting grievances not presented through the representative without notifying the representative, except the informal adjustments with the foremen provided for in the contract.

The evidence offered and rejected, if true, would show that the representative in this case is discriminating between its members and the members of the rival union by refusing to present the grievances of the latter, and making use of the discrimination to force employees to join it in order to get their grievances adjusted. When the Steelworkers union accepted certification as the bargaining representative for the group, it accepted a trust. It became bound to represent equally and in good faith the interests of the whole group. Steele v. Louisville and Nashville R. R. Co., 65 S.Ct. 226. It ought not to discriminate in the execution of its duties between its own members and employees who belong to another union or to no union. The handling of grievances, as has been pointed out, is part of the business it has assumed, and must be done with impartiality. The Board justifies the refusal to hear the evidence by saying that the right of the employees to present their own grievances affords adequate protection for their interests, and the representative is not to be deprived of its rights because it refuses to present grievances for others than its members. We think a meritorious grievance is entitled, if desired, to the aid and countenance of the bargaining representative. If the griever is a member of another union and cannot be represented by his own union, it is the more necessary that he have the aid of the representative. It may be true that the Board has no power to order the representative specifically to do anything, but the rule making authority granted in Section 6(a) might be used to curb conduct which is unfair and not according to law. If no remedy exists under the Act, a judicial remedy might be found, as in the Steele case, supra. But because we shall modify the order as to bargaining so as to require only notification of the intention to adjust grievances not presented by the Steelworkers, and to require cessation of presentation of them through other unions, and because this case is not a proceeding to compel the representative to present grievances for others than its members, we shall not direct the evidence to be taken. We will assume that conduct so plainly at war with the bargaining agent's duty will not be repeated, if it has occurred in the past.

The collection of dues by a union from its members is not in its nature a matter for collective bargaining, which by the Act is limited to agreeing with the employer on rates of pay, wages, hours of employment, and other conditions of employment, together with adjusting grievances between employees and the employer. The Act makes no provision for paying the bargaining representatives. Where a union serves as such, it looks for its financial support to the agreement of its members to pay dues. The law gives no lien on the wages for the dues. As a matter of convenience to employees and unions this Company has for a long time agreed to deduct from wages and pay to the unions the dues of their several members who in writing request it. No law commands this, and if impartially done and not as favoring or assisting any union no law forbids it. The current collective contract made for the bargaining unit by its representative the Steelworkers provides that the Company "shall continue, in accordance with present practice", to deduct for dues from the wages of the members of the Steelworkers. It says nothing

about dues of other unions. The "present" practice" was as above stated. On its face this item was no collective bargain for the unit, but was an agreement for the benefit of the bargaining agent touching its own business with its own members. No one appears to be hurt by it and no one objects. It is not an agreement that no deduction may be made for any other union under the same practice. A union chosen for a time to be bargaining representative of a unit which includes members of other unions has no right to use its position to destroy the other unions. It must serve all employees alike as their representative, and secure itself in its office of representative only by the skill, efficiency, and fairness with which it executes that office. The wages of the members of other unions are their property. If they see fit to request their employer to pay their dues, out of their wages, and the employer is willing to do so, no unfair labor practice is done, provided, as has already been said, there is no favoring of one union over another. What the Company is doing in this regard is not a refusal to bargain with the Steelworkers. There is no foundation for an order to cease and desist therefrom.

■ The Board's order is worded in the broad terms of the statute, that the Company "cease and desist from refusing to bargain collectively." Being in effect an injunction when sustained by the court, it ought to be exact and specific in what it requires or forbids. National Labor Relation Board v. Express Publishing Co., 312 U.S. 426, 61 S.Ct. 693, 85 L.Ed. 930; J. I. Case Co. v. National Labor Relations Board, 321 U.S. 332, 341, 64 S.Ct. 576. The order requires the Company to state that individual group grievances may be presented personally, but they will be adjusted only with the Union (Steelworkers), and that no dues will be deducted except pursuant to the contract with the Union, contrary to our view of the law. The order so worded we refuse to enforce. If the Board will modify it within thirty days so as to require the Company specifically to cease and desist from failing to notify the Steelworkers of grievances not presented by it before adjusting them, except those presented to foremen under the contract, and from adjusting grievances through any other union, with appropriate notices, all in conformity with this opinion, we will decree its enforcement. Final judgment will be withheld for thirty days.