**LION OIL COMPANY and Monsanto Chemical Company, Petitioners,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 15158.

United States Court of Appeals
Eighth Circuit.

June 5, 1957.

Jeff Davis, El Dorado, Ark. (B. L. Allen and H. D. Dickens, El Dorado, Ark., were with him on the brief), for petitioners.

Duane Beeson, Atty., N. L. R. B., Washington, D. C. (George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Frederick U. Reel, Atty., N. L. R. B., Washington, D. C., were with him on the brief), for respondent.

Before SANBORN, JOHNSEN and VOGEL, Circuit Judges.

VOGEL, Circuit Judge.

When this case originally appeared in this court we held in 221 F.2d 231 that the strike involved was in violation of § 8(d) of the National Labor Relations Act, 29 U.S.C.A. § 158(d) and that the strikers lost their status as employees of the company and were not entitled to the relief provided in the Board's order. The Supreme Court reversed in N. L. R. B. v. Lion Oil Co. & Monsanto Chemical Co., 1957, 352 U.S. 282, 77 S.Ct. 330, 1 L.Ed. 2d 331, and the case is back here for further proceedings in conformity with the opinion of the Supreme Court. Because of this court's original determination, neither this court nor the Supreme Court reached the question of whether the Lion Oil Company was guilty of either of the charges of unfair labor practice assert-ed by the Board in support of its petition to this court for enforcement of its order. There remain, therefore, two questions for determination:

One, did the company violate §§ 8(a) (1) (3) and (5) of the Act by procuring the individual agreements of strikers as a condition of their reinstatement that they would not engage in further work stoppages;

Two, did the company violate §§ 8(a) (1) and (5) of the Act by conditioning the execution of a collective agreement with the union upon the withdrawal of unfair labor practice charges filed against it?

The answer to both questions hinges upon whether or not there is substantial evidence in the record to support the Board's finding. 29 U.S.C.A. § 160(e):

"The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive."

In N. L. R. B. v. United Biscuit Co., 8 Cir., 1953, 208 F.2d 52, certiorari denied 347 U.S. 934, 74 S.Ct. 629, 98 L.Ed. 1085, this court stated the rule, 208 F.2d at page 54:

"In this proceeding we are not called upon to weigh the evidence, but only to examine it for the purpose of determining whether or not on the entire record the essential findings are sustained by substantial evidence and in performing this function we must view the evidence in a light most favorable to the prevailing party."

In N. L. R. B. v. Waterman S. S. Corp., 1940, 309 U.S. 206, 226, 60 S.Ct. 493, 503, 84 L.Ed. 704, the Supreme Court stated:

"The Court of Appeals' failure to enforce the Board's order resulted from the substitution of its judgment on disputed facts for the Board's judgment,—and power to do that has been denied the courts by Congress. Whether the court would reach the same conclusion as the Board from the conflicting evidence

is immaterial and the court's disagreement with the Board could not warrant the disregard of the statutory division of authority set up by Congress."

See also N. L. R. B. v. Solo Cup Co., 8 Cir., 1956, 237 F.2d 521, 522.

■ An examination of the original record as well as the printed record convinces us that as to the first question, the Board's conclusion is supported by substantial testimony. On June 21, 1952, the employees involved had been on strike since April 30, 1952. On June 21, 1952, the union offered to return the employees to work. As a counter offer, the company agreed to put the men back to work under their old contract if it were amended to contain a no-strike clause and to provide that the contract be in effect until July 1, 1953. The Board stated:

"On June 21, 1952, and for several days, many employees, individually and in groups, made offers to return to work. As stated in the Proposed Findings, they were informed that they would have to speak to the plant superintendent who in many cases was not available. During this time, however, certain employees were permitted to go to work after they had been individually interviewed by the plant superintendent upon the agreement and under the condition that they would remain at work. Significantly, the Respondent resumed operations in its sulphuric acid section on June 25, 1952, and in the ammonium sulphate section on June 26, 1952, both of which had been shut down during the strike.

"Thus, on June 21, 1952, and the following days, the Respondent interviewed individual strikers and reinstated them upon their assurance that they would not strike. At the same time the Respondent refused the Union's offer to have the strikers return until, among other things, the Union agreed to a no-strike clause for a 1-year period, a condition which the Union was re-

sisting. This position of the Respondent was communicated to all the strikers by the Respondent's letter. As this conduct required employees, as a condition of employment, to give up their adherence to the Union as their bargaining representative in this respect and to return after personal interview as individuals, and not as a group, it constituted discrimination, coercion, restraint, and interference violative of the Act, as to the strikers who continued to adhere to the lawful bargaining position of their statutory representative.

"In the circumstances of this case, therefore, we find that the Respondent violated Section 8(a) (3) and (1) of the Act by discriminatorily refusing to reinstate the employees listed in the complaint, as it rejected the Union's attempts to get the strikers back to work, but at the same time individually interviewed the strikers and reinstated them upon their assurance that they would not strike."

The general testimony of the company's superintendent to the effect that he was given assurance by each employee prior to the time he started working that he would continue to come to work daily and continuously throughout the period of the remainder of the strike, that he interviewed each of the men personally and got an assurance from each that he would continue to work in spite of the picket line justified the Board's inference that it was the company's policy to reinstate strikers only on that basis. The company's complaint that no substantial number of employees returned on this basis will not avail. The fact that some did serves in fortification of the Board's finding that this was what the company was attempting to do and was the reason for other strikers not being permitted to return to work.

■ The National Labor Relations Act does not countenance negotiating with individual employees when they have bargaining representatives. Medo

Photo Supply Corp. v. N. L. R. B., 1944, 321 U.S. 678, 683–685, 64 S.Ct. 830, 88 L. Ed. 1007; N. L. R. B. v. Lightner Pub. Corp., 7 Cir., 1940, 113 F.2d 621, 625; N. L. R. B. v. Acme Air Appliance Co., 2 Cir., 1941, 117 F.2d 417, 420. It requires that representatives designated by the majority of employees shall be the *exclusive* collective bargaining representatives in respect to rates of pay, wages, hours of employment or other conditions of employment. Lion Oil is compelled to deal exclusively and collectively with the union or, as the Supreme Court has put it, " * * * the obligation to treat with the true representatives was exclusive and hence imposed the negative duty to treat with no other". N. L. R. B. v. Jones & Laughlin Steel Corp., 1937, 301 U.S. 1, 44, 57 S.Ct. 615, 627, 81 L.Ed. 893. The fact that a strike was in progress does not terminate the normal employee-employer relationship nor does it relieve Lion Oil from the duty to bargain collectively. N. L. R. B. v. Remington Rand, Inc., 2 Cir., 1942, 130 F.2d 919, 927. Judge John Sanborn spelled out the role of collective bargaining in Wilson & Co. v. N. L. R. B., 8 Cir., 1940, 115 F.2d 759, 763:

"While the act does not compel that employer and employees shall agree, it contemplates that agreements will be reached as the result of collective bargaining. National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 45, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352; Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 236, 59 S.Ct. 206, 83 L. Ed. 126. It obligates the employer to bargain in good faith both collectively and exclusively with the chosen representative of a majority of his employees with respect to all matters which affect his employees as a class, including wages, hours of employment, and working conditions. National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 45, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352; Na-

tional Labor Relations Board v. Union Pacific Stages, Inc., 9 Cir., 99 F.2d 153, 159, 164."

We conclude that the Board's finding that the company violated the provisions of the Act as stated is properly substantiated in the record.

■■ The Board also found that during negotiating meetings between the parties the company made the withdrawal by the union of the unfair labor practice charge filed with the Board in this case a precondition to the signing of a contract with the union. There is unquestioned testimony in the record that at least on one occasion during the negotiations the company representative stated, in effect, that the company would require the union to withdraw the unfair labor practice charges as a condition to settlement. In subsequent negotiations the company withdrew that condition. We think the subsequent withdrawal of the condition precedent to settlement does not justify the company's assertion here that its prior insistence that the unfair labor practice charges be withdrawn before a contract was signed did not delay the settlement of the controversy. Had the company not taken that position, settlement might have been effected on that particular occasion. Withdrawal or settlement of the pending unfair labor practice charge cannot lawfully be insisted upon as a prerequisite to the fulfilling of the requirements of § 8 (a) (1) and (5) of the Act. N. L. R. B. v. Jones Furniture Mfg. Co., 8 Cir., 1953, 200 F.2d 774, 775; N. L. R. B. v. Taormina, 5 Cir., 1953, 207 F.2d 251, 254; Hartsell Mills, Inc., v. N. L. R. B., 4 Cir., 1940, 111 F.2d 291, 292.

We think the record justifies the Board's conclusions as to the second point.

■ While this case was pending in the Supreme Court of the United States Lion Oil Company was merged into Monsanto Chemical Company and by order of the Supreme Court Monsanto Chemical Company was made a party in this case. Monsanto points out that it was in no

way connected with the alleged unfair labor practices of Lion Oil Company and that Lion Oil Company was merged into it after all events here involved occurred. Fearing that if this court were to enforce the Board's order the Board in the future could institute contempt proceedings based upon that order in each case in which there might be an allegation that Monsanto was guilty of an unfair labor practice with respect to its dealings with any one of its employees, regardless of where that employee was employed, Monsanto asks that the Board's order be amended accordingly. As we construe the Board's order, it is applicable only to the company's plant in El Dorado, Arkansas, and we accordingly do not believe that an amendment of the order is required in that respect.

Objection is also made to subparagraph (c) of paragraph 1 of the Board's order. That paragraph orders the company to cease and desist from:

"(c) In any other manner interfering with, restraining, or coercing its employees in the exercise of the rights of self-organization, to form labor organizations, to join any labor organization, to bargain collectively through representatives of their own choosing, and to engage in concerted activities for the purposes of collective bargaining or other mutual aid or protection, or to refrain from any or all such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment, as authorized in Section 8(a) (3) of the Act."

We do not think that the fact that the Board has found unfair labor practices as heretofore indicated justifies the blanket restraining order contained in subparagraph (c) of paragraph 1, supra. The Supreme Court and the Courts of Appeals have criticized this same provision under circumstances similar to those confronting us here. See N. L. R. B. v. Express Publishing. Co., 1941, 312 U.S. 426, 433, 61 S.Ct. 693, 85 L.Ed. 930; May Department Stores Co. v. N. L. R. B., 1945, 326 U.S. 376, 388, 66 S.Ct. 203, 90 L.Ed. 145; N. L. R. B. v. Gluek Brewing Co., 8 Cir., 1944, 144 F.2d 847, 857. In N. L. R. B. v. Swift & Co., 1942, 8 Cir., 129 F.2d 222, 224, this court said:

"This identical provision was criticized and condemned by the Supreme Court in National Labor Relations Board v. Express Publishing Company, 312 U.S. 426, 437, 61 S.Ct. 693, 700, 85 L.Ed. 930, and by this court in Wilson & Co. v. National Labor Relations Board, supra, 123 F.2d [411] at page 419. In the Express Publishing Company case, supra, the court said, 'To justify an order restraining other violations it must appear that they bear some resemblance to that which the employer has committed or that danger of their commission in the future is to be anticipated from the course of his conduct in the past.' There must be some evidence in the record to support the inference that the employer has violated the Act in ways similar to the conduct of which it is found to be guilty, or evidence indicating some danger that it will commit such acts in the future, to justify so broad an injunction. See National Labor Relations Board v. Bradley Lumber Company, supra [8 Cir., 128 F.2d 768]. Our attention is not called to any evidence of such character in the record before us, and we find none. In the decree to be entered herein paragraph 1(c) will be eliminated."

Before such a sweeping mandate be issued, there must be evidence that the employer is guilty of consummate disregard for other provisions in the Act or that there is high likelihood of future violation. We find none. Accordingly, subparagraph (c) of paragraph 1 of the Board's order will be stricken. In all other respects an enforcement order will be granted.