NATIONAL LABOR RELATIONS
BOARD, Petitioner.

v.

GREAT ATLANTIC & PACIFIC TEA
COMPANY, Respondent.

No. 17864.

United States Court of Appeals
Fifth Circuit.

April 26, 1960.

Jones, Circuit Judge, dissented in part.

Duane B. Beeson, Atty., NLRB, Thomas J. McDermott, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Stuart Rothman, Gen. Counsel, Russell Specter, Atty., National Labor Relations Board, Washington, D. C., for petitioner.

Albert S. C. Millar, O. R. T. Bowden, Hamilton & Bowden, Jacksonville, Fla., for respondent.

Before TUTTLE, JONES and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

In this petition to enforce the Board's Order, 123 NLRB 96, there are two main questions. First, may the Employer in employee solicitation in a particular store during non-working time in non-working areas exclude as solicitors those persons employed in its other retail units of its chain store? Second, may the Employer prohibit the dissemination by employees of information concerning the names, addresses and telephone numbers of other employees when not obtained from company records and files?

In representation proceedings not here under any challenge, the Board had determined that the bargaining unit was all of the employees (with certain exceptions not material here) of the Employer in the fifteen A & P supermarkets in the Jacksonville, Florida metropolitan area. The proceedings here grow out of the effort from December 1957 to June 1958 to organize such employees. The election held in May 1958 was adverse to the Union. The Board found that the Employer, in violation of § 8(a)(1) of the Act, 29 U.S.C.A. § 158(a)(1), unlawfully interfered with § 7 organizational rights by (a) maintaining and enforcing its no solicitation rule as to nonworking time and areas, (b) maintaining and enforcing its rule against dissemination of information concerning the names, addresses and telephone numbers of its employees even though obtained from non-company sources, and (c) warning one employee (Harriett) not to talk about union affairs. The Board's Order, in the usual form, comprised cease and desist provisions and those for affirmative action. It included also a general prohibition against any like or related interference.[1]

---

1. The Order provided that the Employer:
 "1. Cease and desist from:
 "(a) Enforcing any rule prohibiting any employee in the Jacksonville, Florida, area * * * from soliciting any other such employee on behalf of * * * any * * * labor organization, in nonpublic nonworking areas, during the nonworking time of both;
 "(b) Warning its employees to refrain from talking to anyone about any labor organization during nonworking time;
 "(c) Enforcing any rule forbidding its employees * * * to exchange with one another, or to furnish to any labor organization, the names, addresses or telephone numbers of their fellow employees, where such information has been obtained from sources other than the Respondent's records;

"(d) In any like or related manner interfering with, restraining, or coercing its employees in the exercise of the right to self-organization, to form labor organizations, to join or assist the above-named Union or any other union, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection * * *.
 "2. Take the following affirmative action, which the Board finds will effectuate the policies of the Act:
 "(a) Revoke its rules dated January 6 and June 5, 1958, insofar as they prohibit any employee from soliciting any other such employee on behalf of any labor organization, in nonpublic nonworking

*Warning Not to Discuss Union Matters.*

As the important issues relate to (a) the right of solicitation and (b) dissemination of information, we think it best to dispose immediately of the third matter (c) concerning the warning to Harriett not to talk about union affairs. The Employer devotes nearly 18 out of 33 pages of its printed brief for this episode. With great earnestness it argues with much elaboration from the legislative history of the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., that the order of the Trial Examiner (and Board) does not reflect adequately as required by § 8(b), 5 U.S.C.A. § 1007(b), the "reasons or basis" for a decision by the mere conclusionary statement that the denial of Harriett's testimony by a supervisory employee "is not credited."

 We think it inappropriate to explore these inquiries as we think, on the face of the conflicting testimony, the record does not support the Board's conclusion. Of course, as we and others have many times pointed out, in the limited review committed to the Courts of Appeals, when the significant act depends on determination of whether certain words were spoken, the credibility choices are for the Board. N.L.R.B. v. Ferguson, 5 Cir., 1958, 257 F.2d 88, 90. But here, crediting fully what Harriett said in the light of an otherwise uncontradicted denial by the supervisors alleged to have made the utterance, it does not on "the whole record," 5 U.S.C.A. § 1009(e), amount to a statement that the illegal warnings were given. In the sole critical answer and in the context of his whole testimony on the subject—including an extended effort to drag something more positive out of the witness—Harriett's testimony added up to nothing more than a very hesitant, cautious tentative assertion that "I *believe* he said." [2] There was thus no charge and countercharge. There was, on the one hand, a positive denial and at most a weak and tentative possibility on the other. Consequently, as to the warning of Harriett the finding may not stand. But this has no appreciable significance upon the Board's final order which we modify, and as modified, enforce.

*Rule Forbidding Dissemination of Information.*

On the charge and complaint, the validity of the Employer's rule forbidding dissemination of information concerning employees focused initially on the discharge of the employee Hazel Vandling, head cashier of one of the retail stores. The merits of that controversy were not resolved as the Board affirmed the Trial Examiner's conclusion that as head cashier she was a supervisory employee not within the protection of § 8(a)(3), 29 U.S.C.A. § 158(a)(3). The record, however, amply justifies the findings that the Employer had promulgated the rule which flatly prohibited the dissemination of any such information by one employee to another, or to an outsider, even though such in-

---

areas, during the nonworking time of both;

"(b) Revoke the above-described rules, insofar as they forbid its employees to exchange with one another, or to furnish to any labor organization, the names, addresses or telephone numbers of their fellow employees, where such information has been obtained from sources other than the Respondent's records;

"* * * *

"It Is Further Ordered that the complaint be, and it hereby is, dismissed, insofar as it alleges that the Respondent violated Section 8(a)(3) of the Act, or violated Section 8(a)(1) of the Act in any manner other than found herein.

"* * * *."

In addition, the Order by paragraphs 2(c) and (d) directed the Employer to post appropriate notices and report the steps taken to comply with the Board's Order.

2. This was Harriett's testimony:
 Trial Examiner:
 "Q. All right, to the best of your recollection, give the substance of what was told you.
 "A. I believe he said I was not supposed to talk to anybody else about the union or union activity."

formation was acquired through sources other than the company's books, records and files. Whatever doubt there might have been because of the generality of the Employer's instructions of January 6, 1958,[3] was eliminated by the explicit, categorical order of June 1958.[4]

The Employer does not directly attack this action of the Board. It likens the situation to that arising under an absolute and sweeping no solicitation rule, and the presumption of invalidity subject to explanation as discussed in Republic Aviation Corp. v. N.L.R.B., 1945, 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372. The Employer's brief states that it "does not here contest the applicability of this presumption to the rules under discussion." It urges, however, that if solicitation can normally be restricted to nonworking time in nonworking areas, paragraphs 1(c) and 2(b) of the Board's Order regarding furnishing of information, note 1, supra, should be limited to nonpublic places and the nonworking time of the employees concerned.

While there is on the surface some analogy between solicitation, as such, and this simple exchange of information among employees, we do not regard the absence of restriction to nonworking time and areas as unreasonable. Solicitation comprehends the approach by one or more advocates for a cause to those who are either uncommitted or even hostile with a view of persuading such persons to a contrary course of action. By its nature solicitation may be disruptive to the maintenance and operation of the employer's business and es-sential internal discipline. The exchange of information voluntarily by one employee to another employee is quite different. At the same time, furnishing such information to a labor organization or to its nonemployee representative presents a situation in which, in the absence of compelling circumstances to the contrary, makes quite reasonable the Employer's contention that it should be confined to nonworking times and areas. In the absence of some such restriction, an employee would be free to leave the performance of his duties either to speak to a union representative in the public shopping areas or use the telephone for such purpose. The employer may not muzzle its employees, but it may expect full and undiverted attention to its affairs while the employee is actively at the post of his duties. Paragraphs 1(c) and 2(b) note 1, supra, of the order should be modified accordingly.

### No Solicitation Rule.

The Board had ample basis for finding that the Employer had promulgated a no solicitation rule. As in the exchange of information rule, notes 3 and 4, supra, the Employer's policy was spelled out in the formal instructions to personnel revised as late as January 1958. These rules forbade all solicitation of employees for other than "noninterfering charitable requests."[5] Whatever else such policy may have been thought to cover, the Employer does not undertake to deny that it was intended that the rule would prohibit three activities. It would forbid (a) solicitation on its premises at any time by a union organizer not in its em-

3. These instructions were contained in mimeographed rules for the guidance of employees. The most recent revision was issued in January 1958. It contained this prohibition:

"No Granting of Interviews, news conferences, or giving out to anyone in any way any information on any phase of the Company's business for publication, broadcast or use for any purpose whatever."

4. These rules were revised and supplemented in June 1958. The prohibition now became categorical:

"No Giving Out to anyone in any way the Names, Addresses or Telephone Numbers of any employees in any store."

5. These rules were a part of a mimeographed list introduced by the explicit warning that, unless specifically approved, "under no circumstances are any of the following things to be permitted in any of our stores or participated in by any employees anywhere."

There were two explicit rules:

"Except For Authorized, orderly and 'noninterfering' solicitations by duly established worthy charitable or welfare or-

ploy, (b) solicitation by an employee of a fellow employee during work time in work areas and (c) solicitation, in work or nonwork areas, of employees of a particular store by persons employed in another of its stores. The Board did not declare that outside, non-employee organizers were entitled to solicit on the company premises. But as to (b) and (c), it did hold that the Employer could not prohibit such solicitation during nonwork time in nonwork areas. The Employer objects to the order on two principal grounds.

First, it contends, the no solicitation rule does not purport to be an absolute prohibition by fellow employees in the same store. On the contrary, it asserts, the rule was intended merely to prohibit solicitations of such fellow employees in work areas during work time. The employees of a store were free to do as they wished during nonwork time in nonwork areas. Consequently, the order was unnecessary and superfluous. As to this, we agree with the Board that the rule, note 5, supra, carries no such limitation. It is sweeping in its terms. Any and all solicitations except some vaguely described noninterfering charitable drives were forbidden. Geographically the prohibition referred to any place "in the stores." As to the solicitors, it reached solicitation by "any one." And all was made doubly clear by specifically forbidding "activity or discussion" relating to "membership drives of any kind." There was, therefore, justification for the issuance of some type of order by the Board to assure employees the right of solicitation of fellow employees during off duty times in nonwork places.

Second, the Employer argues, there is a valid basis for prohibiting solicitation by employees other than those working in the particular store. This is based to a considerable extent on the way these

stores are laid out and operated. In a more or less standardized way the stores consist of a large area open to the buying public for the display and shelving of merchandise. The public sales area is separated by a wall, called a case line, from the nonpublic area. Behind the case line is the meat cutting room, the wrapping room, a warehouse where merchandise is kept and certain restrooms. Set off either as a separate break-room or suitably fenced off as a break-area is a space available for employees during nonwork time for smoke and coffee breaks. Access to the area behind the case line by the public is forbidden. This space is limited to employees only.

■ As the Employer sees it, if it has to permit access to store employees in nonpublic areas by employees working for the company but in other stores, it is, for all practical purposes, virtually the same as being required to permit solicitation by outside persons who are altogether nonemployees. This, of course, may not be compelled for while no " * * restriction may be placed on the employees' right to discuss self-organization among themselves * * * no such obligation is owed nonemployee organizers." N.L.R.B. v. Babcock & Wilcox, 1956, 351 U.S. 105, 113, 76 S.Ct. 679, 685, 100 L.Ed. 975, 983.

■ We think there is much merit to this view. The fact that for representation proceedings the Board deemed it appropriate to lump all of the fifteen stores of metropolitan Jacksonville into a single unit is not controlling. It is a factor. But offsetting it are other equally uncontradicted facets. Each store had its own management staff and its own group of employees who were for the most part hired and discharged by the store management. Wages were paid direct by each store. Considering the layout of a retail supermarket, there were

ganization, such as Community Chests, Red Cross, Churches and Schools, No Solicitations of employees or customers or interference with them in any way while in the stores by anyone is to be permitted."

"No person, whether employee or non-employee, is to be permitted to engage in any activity or discussion in the store at any time on membership drives of any kind."

no ready and practicable facilities by which nonstore employees could be screened or checked as they sought to enter some other unit. So long as they remained in the public areas, they presented no problem not inherent in the presence of a like member of the public. But once they had a right—as the Board impliedly holds—to cross the wall which separated the public from nonpublic areas, many problems arose. Not the least would be the means of identifying such individuals whose identity and status might not be known to those in the store being visited. This has an immediate bearing upon many things of practical business importance. This would include the obvious apprehension of theft especially since loss of merchandise by ingenious shoplifters is a ceaseless challenge to retail management. Likewise, would be the hazard of fire from careless practices and the risk of injury to such person or to other employees while wandering about areas unavoidably cluttered up with merchandise being received for breakdown, marking, shelving and sale.

These factors present real and pressing problems in the management of the retail supermarket business. As the marking of the limits of a no-solicitation rule is unavoidably an "accommodation between" the right of employees to organize and the right of an employer to preserve property rights, it is "not a problem of always open or always closed doors for union organization on company property." N.L.R.B. v. Babcock & Wilcox Co., 1956, 351 U.S. 105, 112, 76 S.Ct. 679, 684, 100 L.Ed. 975, 982. The task of the Board, and to a limited degree a reviewing court, is the difficult one of judicially striking a balance "between the undisputed right of self-organization assured to employees * * * and the equally undisputed right of employers to maintain discipline in their establishment." Republic Aviation Corp. v. N.L.R.B., 1945, 324 U.S. 793, 797–798, 65 S.Ct. 982, 985, 89 L.Ed. 1372, 1376. On the one hand, there is the necessity by the employer to maintain the security of his establishment against possible damage or injury to his property or business through the visitation of those not immediately employed in that store. On the other hand, there is the necessity for the union to be free to espouse its cause of unionism to all of the employees of any unit. Forbidding solicitation in stores other than the one in which the soliciting employee is hired does not unreasonably interfere with the advance of the union's organizational campaign. By the Board's order which we have affirmed with but slight modification, the union has access to information not obtained from company sources concerning the names, addresses and telephone numbers of all employees in each store. Through employees in the particular store, direct and immediate access to all employees is assured in behalf of the union cause in that store during nonwork time and nonwork areas. Those employees in a particular store active in the union's organizing campaign have the means of knowing readily those fellow-store-employees who are unamenable to, or unpersuaded by, the arguments advanced. The persons exhibiting either hostility or indifference may be readily contacted by union organizers thought better equipped to persuade them during nonwork hours. These stores are located in one of the nation's rapidly growing metropolitan areas and there is no suggestion that the nature of their work or the location of their homes makes ready contact either difficult or impossible. There is nothing about the prohibition which will appreciably impede "opportunities for effectively reaching the employees with a pro-union message," N.L.R.B. v. United Steelworkers, 1958, 357 U.S. 357, 364, 78 S.Ct. 1268, 1272, 2 L.Ed.2d 1383, 1389.

It follows, therefore, that the Board's paragraphs 1(a) and 2(a) of the Board's order, note 1, supra, should be amended accordingly.

### The Catchall Clause.

■ The Employer objects to paragraph 1(d), note 1, supra, requiring the Employer to cease and desist from "in any like or related manner interfering

with, restraining or coercing its employees * * *." In the context of this case and order and especially the last paragraph, note 1, supra, dismissing the complaint "insofar as it alleges that the Respondent [Employer] * * * violated Section 8(a)(1) of the Act in any manner other than found herein" it is a self-limiting provision. The "like" or "related" manner of interference has to do with the maintenance or enforcement of rules prohibiting the exchange of information and the solicitation of employees under circumstances and at times and places permitted by the Order as modified by us. It is not subject to the construction of a scatter-gun charge subjecting the Employer to the possibility of contempt proceedings for violations not substantially like or related to the matter specified in the Board's order and discussed here by us.[6]

Order modified in part, enforced in part and denied in part.

JONES, Circuit Judge (dissenting in part).

By the opinion of the majority it is held that, although the employer may forbid union solicitation of one employee by another on working time in a work area, the employer cannot prohibit what is called "simple exchange of information" among employees. How a determination is to be made and by whom it is to be made as to what is solicitation and what is simple exchange of information is not indicated. Since, as is stated, the employer "may expect full and undiverted attention to its affairs while the employee is actively at the post of his duties," it seems to me that the employer should be permitted to forbid union activity by its employees in working areas during working time whether such activity be called solicitation or be called simple exchange of information.

It does not appear to me that the record calls for the so-called catchall clause and I do not think there should be any enforcement of it. Cf. N.L.R.B. v. Local 926, International Union of Operating Engineers, AFL-CIO, 5 Cir., 1959, 267 F.2d 418.

On the other matters decided, I am in agreement with the majority.

6. Cf., May Department Stores Co. v. N.L.R.B., 1945, 326 U.S. 376, 66 S.Ct. 203, 90 L.Ed. 145; N.L.R.B. v. Lamar Creamery Co., 5 Cir., 1957, 246 F.2d 8; Hughes Tool Co. v. N.L.R.B., 5 Cir., 1945, 147 F.2d 69, 158 A.L.R. 1165; Lion Oil Co. v. N.L.R.B., 8 Cir., 1957, 245 F.2d 376; N.L.R.B. v. California Date Growers Ass'n, 9 Cir., 1958, 259 F.2d 587; N.L.R.B. v. Geigy Co., 9 Cir., 1954, 211 F.2d 553, certiorari denied 348 U.S. 821, 75 S.Ct. 33, 99 L.Ed. 647.