TRW, INC., TRW MICHIGAN DIVISION, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent, and

International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO, Intervenor.

No. 17538.

United States Court of Appeals Sixth Circuit.

April 24, 1968.

Harry E. Smoyer and Eugene B. Schwartz, Cleveland, Ohio, Carl H. Clark, Stanley, Smoyer & Schwartz, Cleveland, Ohio, on brief, for petitioner.

Laurence H. Silberman, N. L. R. B., Washington, D. C., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Elliott Moore, Attorney, N. L. R. B., Washington, D. C., on brief, for respondent.

Before WEICK, Chief Judge, and PECK and COMBS, Circuit Judges.

COMBS, Circuit Judge.

The National Labor Relations Board held that TRW, Inc., Michigan Division, violated Section 8(a) (1)[1] of the National Labor Relations Act by publishing and enforcing a rule prohibiting during working hours solicitation of its employees in a union organizing campaign. 161 NLRB No. 63; 1967 CCH NLRB ¶ 20,848. The

---

1. Sec. 8. (a) It shall be an unfair labor practice for an employer—(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in Section 7.

company was ordered to cease and desist from enforcement of the rule and to post notices to that effect. The company has filed petition for review and the Board has filed cross-petition for enforcement of its order. United Automobile Workers, AFL-CIO, is an intervenor.

In November, 1964, the company received a letter from the union announcing that eight named employees were members of a union organizing committee in the company's plant and were engaged in self-organization. The letter contained a reminder that any attempt to interfere with the employees in the exercise of their right to organize would be in violation of the Labor-Management Relations Act. The company on the same day posted the following bulletin:

"This morning's mail brought me the notification that eight of our employees are organized into a committee to unionize this plant.

"I do not like to see this development. I feel this can only lead to hard feelings, arguments, and future difficulties.

"The letter further points out that the law protects such people who are engaged in this activity; be assured that *no malice or prejudice will ever be directed toward these employees.*

"As you can appreciate, union organizing activity cannot be carried on during hours of work on company property. This type of solicitation is in violation of company rules and violators will be disciplined, including discharge.

"As you know, employees are free to converse on any subject during breaks and lunch periods."

A trial examiner found, and the Board agreed, that the publication and enforcement of the rule announced in this bulletin violated the Act. There is no dispute about the facts and there is not much dispute about the applicable law. The disagreement is in regard to the inferences which should be drawn from the application of the law to the admitted facts. Section 7 of the Act gives employees the "right to self-organization." Section 8(a) (1) of the Act makes it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in Section 7."

While the Act created new rights for employees, it reaffirmed the right of an employer to secure the production for which he pays. The Board held in Matter of Peyton Packing Co., 49 NLRB 828, 843 (1943):

"Working time is for work. It is therefore within the province of an employer to promulgate and enforce a rule prohibiting union solicitation during working hours. Such a rule must be presumed to be valid in the absence of evidence that it was adopted for a discriminatory purpose."

In Republic Aviation Corp. v. National Labor Relations Board, 324 U.S. 793, 803, 65 S.Ct. 982, 89 L.Ed. 1372 (1945), the foregoing rule was quoted with approval.

Judge Miller of this Court said in his concurring opinion in National Labor Relations Bd. v. F. W. Woolworth Co., 214 F.2d 78, 85 (1954):

"Neither the Constitution, the common law, nor the Labor Management Relations Act confers upon employees the right to use for union purposes the property of their employer during working hours, over the objections of the employer."

Judge Miller's concurring opinion is cited with approval in National Labor Relations Board v. United Steelworkers of America, 357 U.S. 357, 364, 78 S.Ct. 1268, 1272, 2 L.Ed.2d 1383 (1958).

It is clear therefore that the challenged rule is a valid one unless there is evidence in the record to overcome the presumption of validity. The Board relies on the rule stated by it in *Peyton* and by the Supreme Court in *Republic Aviation* that a rule prohibiting union solicitation, even during working hours, will not be upheld if it is "adopted for a discriminatory purpose." That is, if the rule is promulgated for the purpose of interfering with, restraining, or coercing employees in the

exercise of their "right to self-organization" it is invalid. The Board adopted the trial examiner's findings that the rule here was adopted for a discriminatory purpose.

■ It is rightly pointed out in brief for the Board that a reviewing court is bound by the Board's findings of fact and by reasonable inferences drawn from those facts providing they are supported by substantial evidence in the record as a whole. Universal Camera Corp. v. National Labor Relations Bd., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); N.L.R.B. v. Power Equipment Co., 313 F. 2d 438 (6th Cir. 1963).

Now we look to the evidence. The company had operated its Michigan plant without published rules since 1954. Its policy was to formulate a rule and post it only when in its opinion there was need for such a rule. The company has maintained a permissive attitude toward talking by employees during working time and has permitted some selective soliciting activities. Talking among employees was challenged only when it became excessive to the point of possibly interfering with production. Enforcement for both formal and informal rules was the same. On the first offense the employee was warned by his foreman that his actions were objectionable. No record was made of this warning. On the second offense, if it followed closely after the first, the employee was given a blue memorandum in the nature of a reprimand. He was expected to read, sign, and return the memorandum, and it was then placed in his personnel file.

Special permission was given to a few selected organizations to solicit funds during working time. In this category were the TRW employees' Consolidated Welfare Fund and the Pioneer Club. The welfare fund had permission to conduct an annual solicitation drive of about one week's duration for funds for charitable purposes, including both plant and community projects. A twice-yearly raffle was conducted by the Pioneer Club, an employee recreation organization. The club handled such things as picnics, dances and sports activities for the employees. Permission has also been granted on at least three occasions since 1954 for the sale of Government bonds to employees during working hours. Employees in one department were asked, with the approval of a company foreman, on at least one occasion to contribute to a flower fund for a deceased fellow employee. The trial examiner placed considerable emphasis on the company's approval of these solicitations during working hours as contrasted with its disapproval of solicitations for union membership. It is shown by the evidence, however, that the company was very careful in giving permission to solicit during working hours. No organizations other than those mentioned above were given such permission and politicians who requested permission to visit the plant during working hours were refused.

There was testimony that for the duration of the union campaign, a period of about two months, employees discussed the subject freely during working hours without objection by the company. It was also shown that union buttons were worn by some employees during working hours.

On the subject of enforcement of the challenged rule, disciplinary action was taken against employees on only two occasions. Employee Gary McQuillien was requested by his foreman to come into the superintendent's office during a break. The foreman told him he had received a complaint that McQuillien was annoying another employee about signing a union card. The foreman called attention to the bulletin and asked if McQuillien understood it. McQuillien replied that he did. He testified that he interpreted the foreman's remark as "a friendly tip." Harry Hattis was talked to by his foreman, Don Blundy, who told him he had received a complaint that Hattis had been bothering a fellow employee about the union during work time. Hattis denied the charge and said he had never solicited for the union. Blundy closed the conversation by saying that

he had received the complaint and did not want anyone to get hurt because of it. Hattis testified that he considered Blundy's statements as "friendly advice." No blue memoranda were issued and both of these employees testified that they had been warned of excessive talking during working time prior to the union campaign. No claim was made by anyone that the company was interfering with the union's organizing efforts and no request was made for any relaxation of the no solicitation rule.

The company offered proof that there was opportunity to distribute literature and solicit orally during non-work time in work areas and in the company cafeteria where employees congregated before shifts; also that distribution of union leaflets and oral solicitation were permitted on the only roadway and at the only employees' entrance to the plant. The company also offered to prove that distribution of union literature was permitted throughout the plant during both working hours and non-working hours. This testimony was rejected by the examiner as irrelevant. The company contends it should have been admitted as bearing on the question whether the challenged rule was adopted for a discriminatory purpose.

■ Among the reasons which the examiner gave as influencing his decision against the company were the following: (1) the timing of the bulletin; (2) the departure of the company from its normal lenient policy in regard to solicitations during working hours; (3) adoption by the company of a special policy in regard to union solicitations even though it has had no experience with union organizing campaigns; and (4) the severity of the sanctions imposed for infraction of the rule.

In our opinion the foregoing factors do not constitute evidence that the rule was adopted for a discriminatory purpose. We fail to see how the timing of the bulletin under the circumstances here shown has any significant bearing on the issue to be resolved. If it was to be published at all, this was the logical time to do it. The company could well have considered that publication of such a rule prior to the receipt of the union's letter would be premature. It would have been inconsistent with company policy not to publish rules unless they were needed. Publication of the rule after the organizing campaign was over, of course, would have been a futile gesture. The publication of the bulletin was triggered by the union's letter so the timing was the result of action by the union rather than by independent choice of the company.

■ The company's firm position against union solicitation during working hours as contrasted with its policy in regard to other solicitations perhaps comes closest to being evidence of discrimination. But the evidence as a whole shows that the company guarded its working time carefully and exceptions to its no solicitation policy were made sparingly. Solicitation for welfare and recreation purposes, as well as for the sale of bonds, was strictly limited both as to time and designated periods during the year in order not to interfere with production. The time which would have been lost by permitting union solicitation would have been more difficult to calculate. By its very nature this type of solicitation may cause argument and dissension among employees. N. L. R. B. v. Great Atlantic & Pacific Tea Company, 277 F.2d 759, 762 (5th Cir. 1960). At most, the company's firm attitude against union solicitation raises no more than a suspicion of intent to discriminate, and suspicion alone is not sufficient basis for a finding of violation of the law. In the absence of evidence there is no presumption of intent to disobey the law. To the contrary, it must be presumed, in the absence of evidence, that one who chooses to exercise a right conferred by law intends to exercise that right in a legal manner. Cf. N. L. R. B. v. Shawnee Industries, Inc., 333 F.2d 221, 225 (10th Cir. 1964); National Labor Relations Board v. McGahey, 233 F.2d 406, 412 (5th Cir. 1956).

The examiner makes the point that the company has had no experience with union organizing campaigns so far as is shown by the record. Thus he reasons, management had no way of knowing how such a campaign might affect production in the plant; therefore the rule must have been adopted for a discriminatory purpose. We cannot follow this reasoning. The mere fact that this was the first attempt by employees in this plant to organize a union raises no inference that management personnel were ignorant of the possible consequences of such a campaign. On this point the presumption would have to be indulged that as experienced, capable business men they would know the effect which union solicitation during working hours would have on plant production. It cannot be presumed that management personnel would not be informed on those subjects which are matters of common knowledge to others in their field. Moreover, TRW, Inc., was formerly known as Thompson Products, Inc. Thompson Products, Inc., has been before this Court in enforcement proceedings with the Board in National Labor Relations Board v. Thompson Products, 97 F.2d 13 (1938); National Labor Relations Board v. Thompson Products, 130 F.2d 363 (1942); National Labor Relations Board v. Thompson Products, 162 F.2d 287 (1947).

The examiner also refers to the severity of the sanctions imposed for violation of the rule, namely discharge, as contrasted with less severe penalties for violation of other rules. Again, we are unable to see how this creates any inference of discriminatory purpose on the part of the company. The decision to prohibit union solicitation during working hours was an important policy decision by the company. The company having taken this position, it is not surprising that a penalty was prescribed commensurate with the importance of the decision. A similar penalty was imposed by rules in Avondale Mills and Textile Workers of America, 115 N.L.R.B. No. 130, which were approved in National Labor Relations Board v. Avondale Mills, 242 F.2d 669, 671 (5th Cir. 1957), affirmed, National Labor Relations Board v. United Steelworkers of America, 357 U.S. 357, 361, 78 S.Ct. 1268, 2 L.Ed.2d 1383 (1958), and in Wellington Mill Division, West Point Mfg. Co. v. N. L. R. B., 330 F.2d 579, 589 (4th Cir. 1964), cert. denied, 379 U.S. 882, 85 S.Ct. 144, 13 L.Ed. 2d 88.

In summary, we hold that the company had a legal right to formulate and enforce the challenged rule and the Board has failed to show that it was formulated for a discriminatory purpose.

In view of our decision on the validity of the challenged rule, we do not reach the question of competency of the evidence proffered by the company and rejected by the examiner. Our ruling on that question is expressly reserved.

Enforcement of the Board's order is denied.