FRANCISCO CUADRADO, Petitioner, *v.* LABOR RELATIONS BOARD, Respondent.

No. 75. Decided March 11, 1963.

A. Yes.

*Hernán R. Franco* for petitioner. *J. B. Fernández Badillo, Solicitor General, José Orlando Grau, Rafael Buscaglia, Jr.,* and *J. F. Rodríguez Rivera* for respondent.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Santana Becerra, and Mr. Justice Dávila.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

On April 15, 1957 the Metropolitan Omnibus Authority, hereinafter called the "Authority," and the Union of Transportation Workers and Subsidiary Branches, hereinafter called the "Union," entered into a collective agreement. Article XV, par. D, of that agreement provided in its pertinent part that if "a laborer absents himself, either on leave of absence without pay or of his own volition, without previous authorization, and it is determined after an investigation conducted by the Authority and the Union that he is performing work for pay in some other work extraneous to the Authority, such action shall constitute cause for discharging him from his employment."

On a certain day of the month of September 1958 mechanic Francisco Cuadrado, a Union member, absented himself from work without authorization and after an investigation was conducted by a representative of the Union and another of the Authority it was found that on that day Cuadrado performed work for pay in El Comandante racetrack during hours when he should have been working for the Authority. By letter of September 25, 1958 the Authority discharged Cuadrado from his employment for that cause.

Upon receipt of that letter Cuadrado conferred with Félix G. Martí, Head of Authority Personnel, in order to find out whether his case could be taken before the Complaint and Grievance Committee, to which the latter answered that

it could not. However, Cuadrado did not use the Union services until some time later, as we shall presently see.

At the time of his discharge Cuadrado was one of the leaders of the dissenting movement within the Union. On October 6, 1958 Cuadrado took his case before the Puerto Rico Labor Relations Board through another union known as "Union of Chauffeurs and Mechanics and Subsidiary Branches of San Juan." This Union filed a charge against the Authority (then known as "Metropolitan Omnibus Company, Inc.") charging it with a violation of § 8(1) (a) and (c) of the Act consisting in having discriminated with respect to the holding of employment of Francisco Cuadrado "in discharging him from work for union activities in favor of the Union of Chauffeurs and Mechanics and Subsidiary Branches of San Juan." [1] However, Cuadrado withdrew this charge, with the approval of the Chairman of the Board, on April 21, 1959, or about six months after is was filed.

On September 9, 1959, when about one year had elapsed since his discharge, Cuadrado requested the Union of Transportation Workers of Puerto Rico and Subsidiary Branches, Inc., to file with the Board a charge of unfair practice, which it did, against the Authority consisting in a violation of § 8(1) (f) of the Act in that it had violated since July 21, 1959 the collective agreement in refusing to meet with the Complaint and Grievance Committee to discuss the "suspension from employment and salary of laborer Francisco Cuadrado."

The Board filed the complaint and appointed a trial examiner before whom proper hearings were held, after which the examiner submitted a report with his recommendations.

---

[1] Elections were held on December 4, 1958 in order to elect the representative of the Authority employees which was then the Union of Transportation Workers of Puerto Rico and Subsidiary Branches, Inc. This Union and the Union of Chauffeurs and Mechanics and Subsidiary Branches of San Juan participated in the elections, the former having been elected.

He made therein, among others, the following conclusions of law:

"    .    .    .    .    .    .    .

"4. Respondent violated the collective agreement entered into on April 15, 1957 and which was in force until December 31, 1958, by refusing to submit the case of Francisco Cuadrado, at his request, shortly after his discharge, to the Complaint and Grievance Committee. By such action respondent was and is engaged in an unfair labor practice within the meaning of § 8(1) (f) of the Act.

"    .    .    .    .    .    .    .

"7. Respondent violated the collective agreement entered into on July 7, 1959 and which was in force from January 1, 1959 until December 31, 1962, in refusing to submit to the Labor Relations Committee, at the request of the Union made on July 21, 1959, the case of discharge of employee Francisco Cuadrado. By such action respondent was and is engaged in an unfair labor practice within the meaning of § 8(1) (f) of the Act.

"8. As of July 21, 1959 the employer refused to bargain with complainant Union by refusing to submit to the Labor Relations Committee created by the collective agreement entered into on July 7, 1959 which was in force from January 1, 1959 until December 31, 1962, wherefore it was and is engaged at present in an unfair practice within the meaning of § 8(1) (d) of the Act.

"    .    .    .    .    .    .    .

"11. As a result of its conduct in refusing to bargain on July 21, 1959 and on subsequent dates with the exclusive representative of its employees in an appropriate unit despite the demand made therefor, appellee employer interfered with, restricted and coerced or attempted to interfere with, restrict or coerce its employees in the exercise of the rights guaranteed by § 4 of the Act, and therefore it was and is engaged at present in an unfair labor practice within the meaning of § 8(1) (a) of the Act."

On September 16, 1960 the Board entered its "Decision and Order." It held that Cuadrado, by himself or through complainant Union, failed to comply with the pertinent provisions of the collective agreement in force at the time of

his discharge and, consequently, that respondent Authority did not commit the acts alleged in the complaint. It further held that respondent did not violate the collective agreement in force from January 1, 1959 until December 31, 1962, nor did it refuse to bargain with complainant Union as alleged in the complaint. In view of these conclusions, the Board dismissed the complaint.

Appellant charges the Board with committing the following errors:

"(1) In holding that Art. XIII, subd. (D), of the collective agreement which expired on December 31, 1956 was applicable to appellant Francisco Cuadrado.

"(2) In holding that respondent did not violate the collective agreement entered into on April 15, 1957 and which was in force from January 1, 1957 to December 31, 1958.

"(3) In holding that respondent did not violate the collective agreement entered into on July 7, 1959, which was retroactive to January 1 of that year and which will expire on December 31, 1962.

"(4) In holding that respondent did not refuse to bargain with complainant Union as alleged in the complaint; and

"(5) In dismissing the complaint."

In discussing the first error, petitioner Cuadrado maintains that since his case arose in 1958, neither the collective agreement which expired on December 31, 1956 nor its procedural provisions were applicable to him. He contends that for this reason the Complaint and Grievance Committee created thereunder had no jurisdiction over his case. He alleges further that since his case was decided by a representative of the Union and another of the Authority, he could not take the same before that Committee, being therefore deprived of any remedy notwithstanding the constitutional right of due process consecrated in the agreements. Let us examine the pertinent provisions of both agreements.

The agreement entered into on April 15, 1957 by the Authority and the Union was in force until December 31, 1958. Cuadrado's discharge occurred while this agreement

was in force.  That agreement provided in Art. XXII the following:

"ARTICLE XXII

"(Settlement of Dispute)

"A. The right to be heard and to introduce the necessary evidence in self-defense whenever disciplinary penalties are applied or charges are filed which may give rise to disputes on the interpretation and application of the contract provisions, is hereby recognized to be fundamental for the existence itself of this agreement and the preservation of industrial peace.

"B. The parties agree that the complaints brought by the laborer individually and his immediate supervisor should be discussed and settled as soon as possible between them without the need of written procedures, in pursuance of the recognized canons which insure the dignity for both parties.  If they fail to reach a satisfactory agreement, the complainant shall take his case before his representative.

"C. The representatives of both parties shall take prompt action to settle the dispute and shall try to reach an agreement which shall be final.  Each representative shall keep the person represented informed on the developments in the proceedings, and if they fail to reach an agreement he shall report to him in writing.

"D. Where a case is not decided, the complainant shall appeal to the Complaint and Grievance Committee as provided in subd. F hereof.  The decision of the Complaint and Grievance Committee shall be final.

"*The parties agree that, until such time as the regulations provided in this subdivision are approved, the present Committee shall continue to operate and to be governed by the norms and provisions of the agreement which expired on December 31, 1956.*"  (Italics ours.)

The subscribing parties failed to prepare the regulations provided in the agreement of April 15, 1957 to govern the functions of the Complaint and Grievance Committee. Therefore, by virtue of the provisions of the second paragraph of subd. D copied above, the Complaint and Grievance Committee continued to operate and to be governed by the norms and provisions created by the agreement which expired on

December 31, 1956. Those norms and provisions were set forth in Art. XIII of the agreement which reads as follows:

"ARTICLE XIII

"(Complaint and Grievance Committee)

"A. A Complaint and Grievance Committee is hereby created which shall be composed of two representatives designated by the Authority and two others designated by the Union. The complaints which may arise in connection with the provisions hereof and which may not have been decided by the representative of the Union and of the Authority in each department or division shall be appealed before this Committee. This Committee shall have full powers to conduct any investigation it may deem advisable of the cases submitted to it for consideration and decision thereof by a majority. In the event of inability to reach an agreement on any complaint, this Committee shall designate unanimously a Fifth Member and the decision by a majority of the Committee thus constituted shall be binding on the parties. Should the Union and the Authority representatives be unable to agree on the selection of the Fifth Member in the cases of impasse, such member shall be chosen democratically from among the following entities: Department of Justice, Conciliation and Arbitration Service, and the Commissioner of Labor or his representative, in order that the said Fifth Member may reach fair conclusions and make a fair award, and there shall be submitted to him the stenographic record of the hearing and any other document or evidence which may have been considered by the Committee or which the parties may deem advisable. If necessary, the Fifth Member may enlarge the investigations made by the Committee which intervened at the hearing in such manner as he may deem advisable.

"B. In the case of suspensions decreed by the Authority, the latter shall be bound to submit the complaint to the Complaint and Grievance Committee within seventy-two (72) hours from the date of suspension, excluding Saturdays, Sundays and holidays.

"D. Every complaint, dispute or grievance, with the exception of those mentioned in subd. 'B' above, shall be filed with the Secretary of the Complaint and Grievance Committee within a period which shall not exceed one week after the facts

are known. If it is not filed within such period, the same will be automatically dismissed."

Cuadrado's case was not governed by the provisions of subds. B, C and D of the agreement entered into on April 15, 1957. In discharging petitioner Cuadrado from employment, the Authority followed the procedure established in Art. XV of the agreement. It will be recalled that upon investigation conducted by the Authority and the Union, it was determined that Cuadrado was performing work for pay in El Comandante racetrack on the day he absented himself from work without authorization from the Authority. Such determination gave rise to the letter of discharge. However, although it may be asserted that Cuadrado was represented by the Union in the investigation of those facts, it is no less true that he was not heard in connection therewith. Considering that Art. XXII *supra* of the agreement consecrates the laborer's right "to be heard and to introduce evidence in self-defense which he may deem advisable whenever disciplinary sanctions are applied to him or charges are preferred which may give rise to disputes on the interpretation and application of such contract provisions," we believe that Cuadrado could take his discharge case before the Complaint and Grievance Committee; but since this Committee was operating and was governed by the norms and provisions of the agreement which expired on December 31, 1956, Cuadrado should have availed himself of such norms and provisions. He failed to do so. He merely asked verbally the Head of Authority Personnel if his case could be taken before the Complaint and Grievance Committee, the answer having been negative. We agree with the Board that Cuadrado's action did not comply substantially with subd. D of the agreement which expired on December 31, 1956. If he was not satisfied with his discharge or separation from employment, he should have filed his dispute or complaint with the Complaint and Grievance Secretary within one week after receipt of the letter of discharge.

According to the provisions of subd. D, if the dispute or complaint is not filed within a period not to exceed one week after the facts are known, the same shall be automatically dismissed. In view of the answer of the Head of the Authority Personnel in the sense that his case could not be taken before the Complaint and Grievance Committee, Cuadrado could have procured the services of the Union.[2] He failed to do so, and the evidence heard before the trial examiner shows that the Union was willing to render its services notwithstanding Cuadrado belonged to a dissenting union movement. He could have also filed his complaint personally with the Secretary of the Complaint and Grievance Committee within the period fixed in the agreement, but he also failed to do so.[3] Moreover, complainant used the services of another union, which was not the representative of the Authority employees, to file a charge against the latter Authority before the Board for discriminating against the tenure of his employment.

On the other hand, since complainant was *separated* from his employment through the procedure already outlined, his case is not covered by subd. B of Art. XIII of the agreement which expired on December 31, 1956 and which embraces the procedure to be followed in the event of suspensions. According to that subdivision, in cases of *layoffs* decreed by the Authority, the latter was bound to submit the complaint before the Complaint and Grievance Committee

---

[2] It is the function of a bargaining representative to represent all the members of the collective bargaining unit. *Hughes Tool Company* v. *N.L.R.B.*, 147 F.2d 69 (C.C.A. 5, 1945).

[3] Under the Act—says respondent—an employer is entitled to discharge his employees for good cause, or for no cause at all, including mere caprice, but not for union considerations. *Labor Board* v. *Jones & Laughlin*, 301 U.S. 1; *Luce & Company, S. en C.* v. *Labor Relations Board*, 71 P.R.R. 335. Absent union considerations in Cuadrado's case, his legal situation must refer exclusively to his rights under the collective agreement, and we have already pointed out that Cuadrado placed himself outside the agreement guarantees by his failure to resort to the means in order to assert his rights. FRANK ELKOURI, How Arbitration Works, The Bureau of National Affairs, Inc., p. 85.

within 72 hours counted from the layoff date. This provision prevented the protracted layoff of an employee without the prompt intervention of the Complaint and Grievance Committee. However, since the case was one of discharge or separation, the Authority was not bound to submit the complaint to the Committee.

In our opinion, the Board acted correctly in holding that Art. XIII, subd. (D), of the collective agreement which expired on December 31, 1956 was applicable to the case of appellant Cuadrado, and in holding that respondent did not violate the collective agreement entered into on April 15, 1957 and effective from January 1, 1957 to December 31, 1958. The first errors were not committed.

Nor did the Board commit the third error in holding that respondent did not violate the collective agreement entered into on July 7, 1959, retroactive to January 1 of that year and effective until December 31, 1962.

This assignment is based on the fact that the respondent Authority refused to meet with the Labor Relations Committee (created in the 1959 agreement) in order to discuss Cuadrado's case when the Board made demand therefor on July 21, 1959.

We know that Cuadrado's discharge was decreed during the life of the agreement which expired on December 31, 1958. However, the expiration of the agreement alone would not exempt respondent from responsibility if it committed a violation of the Act in refusing to take Cuadrado's case before the Complaint and Grievance Committee. However, its responsibility arises from the violation of the agreement under which the facts arise.[4] The 1959 agreement was not given retroactive effect nor did it cover the cases arising prior to its effectiveness. Therefore, the Authority committed no violation of the 1959 agreement and, hence, a violation of the Act, in refusing to submit complainant's

---

[4] See *Knight Morley Corp.*, 116 N.L.R.B. No. 6, 38 L.R.R.M. 1194; *Textile Workers* v. *Lincoln Mills of Alabama*, 36 L.R.R.M. 2361.

case for discussion. This leads us to the consideration of the fourth error.

The backbone of this assignment is that the Board refused to hold that respondent violated the collective agreement entered into on July 7, 1959 in refusing to submit to the Labor Relations Committee, at the request of complainant Union made July 21, 1959, the case involving the discharge of employee Francisco Cuadrado. The trial examiner had so held and, consequently, he determined that respondent had and was engaged in an unlawful labor practice within the meaning of § 8(1) (f) of the Act.[5] The examiner also held that in refusing to bargain with the Union and to submit Cuadrado's case to the Labor Relations Committee, the employer had engaged in an unfair labor practice within the meaning of § 8(1) (d) of the Act.[6]

The Board disagreed with these conclusions and set them aside.

■■ The refusal to arbitrate a dispute, according to the Board's contention, does not constitute by itself a refusal to bargain and, hence, a violation of the Act. *Textron Puerto Rico*, 107 N.L.R.B. No. 142 (1953), 33 L.R.R.M. 1194; *United Telephone Co. of the West*, 112 N.L.R.B. No. 103 (1955), 36 L.R.R.M. 1097. If the employer does not act in bad faith in refusing to bargain, he commits no violation of the Act.

---

[5] Subdivision (1) (f) of § 8 of the Act provides:

"(1) It shall be an unfair labor practice for an employer acting individually or in concert with others:

"(f) To violate the terms of a collective bargaining contract, including an agreement to accept an arbitration award whether the same is or is not included in a collective bargaining contract; *Provided, however*, that the Board may dismiss any charge in which there is alleged a violation of this subsection, if the union that is party to the contract is guilty of a current breach of the contract or has not complied with an order of the Board concerning any unfair labor practice as provided by this subchapter."

[6] Paragraph (d), subd. (1), of § 8 provides:

"(d) To refuse to bargain collectively with the representatives of a majority of his employees in a unit appropriate for collective bargaining, subject to the provisions of section 66 of this title." (29 L.P.R.A. § 69.)

676

In the instant case the Union did not require the employer to bargain the interpretation of the clauses of the collective agreement. Its demand was to discuss Cuadrado's case and to permit the latter to present evidence in self-defense. The Union did this after almost one year had elapsed since Cuadrado's discharge, namely, after Cuadrado's dispute or complaint had been automatically dismissed by virtue of the provisions of the agreement itself under which the facts arose. Under such circumstances, we must agree with the Board that respondent did not refuse to bargain when the Union sought to reopen Cuadrado's case in order to take up the same before the Complaint and Grievance Committee. *Cf. United Telephone Co., supra; Consolidated Aircraft Corp.*, 47 N.L.R.B. 694 (1943), 12 L.R.R.M. 44; *Timken Roller Bearing Co.* v. *N.L.R.B.*, 161 F.2d 949.

The decision and order of the Board will be affirmed.