FRANCISCO CUADRADO, peticionario, *v.* JUNTA DE RELACIONES DEL TRABAJO, querellada.

*Número:* 75 *Resuelto:* 11 de marzo de 1963

*Hernán R. Franco,* abogado del peticionario; *J. B. Fernández Badillo, Procurador General, José Orlando Grau, Rafael Buscaglia, hijo,* y *J. F. Rodríguez Rivera,* abogados de la querellada.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Santana Becerra y Dávila.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

En 15 de abril de 1957 se firmó un convenio colectivo entre la Autoridad Metropolitana de Autobuses, que en adelante llamaremos la "Autoridad" y la Unión de Trabajadores del Transporte y Ramas Anexas, Inc., que en adelante llamaremos "La Unión". El Artículo XV, inciso D de dicho convenio disponía en lo pertinente que si "un obrero se

ausenta, bien sea con licencia sin sueldo o por voluntad propia sin previa autorización y que se determina mediante investigación hecha por la Autoridad y la Unión, que está desempeñando labores compensadas en cualquier otro trabajo ajeno a la Autoridad será motivo para separarlo de su empleo."

Un día del mes de septiembre de 1958 el mecánico Francisco Cuadrado, afiliado a la Unión, se ausentó sin permiso de su trabajo y luego de practicarse una investigación por un representante de la Unión y otro de la Autoridad se determinó que en dicho día Cuadrado desempeño labores compensadas para el Hipódromo El Comandante en horas que debía trabajar para la Autoridad. Por carta del 25 de septiembre de 1958, la Autoridad despidió por ese motivo de su empleo a Cuadrado.

Al recibir dicha carta Cuadrado se entrevistó con el señor Félix G. Martí, Jefe de Personal de la Autoridad para preguntarle si su caso podía llevarse ante el Comité de Quejas y Agravios, contestándole éste en la negativa. Sin embargo, Cuadrado no utilizó los servicios de la Unión hasta mucho tiempo después, según veremos más adelante.

Para la fecha de su despido Cuadrado era uno de los líderes de un movimiento disidente dentro de la Unión. En octubre 6 de 1958, Cuadrado llevó su caso ante la Junta de Relaciones del Trabajo de Puerto Rico a través de otra unión denominada "Unión de Choferes y Mecánicos y Ramas Anexas de San Juan". Esta Unión radicó un cargo contra la Autoridad (denominada entonces "Compañía Metropolitana de Autobuses, Inc.") imputándole haber violado la Ley en su Art. 8, Sec. 1, Incisos (a) y (c) por haber discriminado con la tenencia de empleo de Francisco Cuadrado "al despedirlo de su trabajo por motivo de sus actividades gremiales en favor de la Unión de Choferes y Mecánicos y Ramas Anexas de San Juan".([1]) Sin embargo

([1]) En 4 de diciembre de 1958 se celebraron elecciones para elegir al representante de los empleados de la Autoridad que lo era entonces

este cargo fue retirado por Cuadrado, con la aprobación del Presidente de la Junta, el 21 de abril de 1959, o sea, unos seis meses después de haberse radicado.

En 9 de septiembre de 1959, cuando ya había transcurrido cerca de un año de su despido, Cuadrado solicitó de la Unión de Trabajadores del Transporte de Puerto Rico y Ramas Anexas, Inc., y ésta radicó ante la Junta un cargo de práctica ilícita contra la Autoridad imputándole una violación del Art. 84(1)(f) de la Ley por haber violado desde el 21 de julio de 1959 el convenio colectivo al rehusar reunirse con el Comité de Quejas y Agravios para discutir la "suspensión de empleo y sueldo del obrero Francisco Cuadrado".

La Junta expidió la querella y nombró un Oficial Examinador ante quien se celebraron las vistas correspondientes, luego de lo cual dicho Oficial rindió un informe con sus recomendaciones. En el mismo hizo, entre otras, las siguientes conclusiones de derecho:

" . . . . . . .

"4—La querellada violó el convenio colectivo que se firmó el 15 de abril de 1957 y que estuvo vigente hasta el 31 de diciembre de 1958, cuando rehusó someter, una vez Francisco Cuadrado lo requirió poco después de ocurrir su separación, al Comité de Quejas y Agravios, el caso de la separación del mismo Cuadrado. Por esa actuación la querellada incurrió y está incurriendo en una práctica ilícita de trabajo dentro del significado del Artículo 8 (1) (f) de la Ley.

" . . . . . . . .

"7—La querellada violó el convenio colectivo, que se firmó el 7 de julio de 1959 y cuya vigencia se extiende desde el 1ro. de enero de 1959 hasta el 31 de diciembre de 1962, cuando rehusó someter, una vez la Unión querellante así lo requirió el 21 de julio de 1959, al Comité de Relaciones Obreras, el caso de la separación del empleado Francisco Cuadrado. Por esa actuación la querellada incurrió y está incurriendo en una prác-

la Unión de Trabajadores del Transporte de Puerto Rico y Ramas Anexas, Inc. Participaron en las elecciones esta Unión y la Unión de Choferes y Mecánicos y Ramas Anexas de San Juan, saliendo triunfante la primera.

tica ilícita de trabajo dentro del significado del Artículo 8 (1) (f) de la Ley.

"8—A partir del 21 de julio de 1959 el patrono se negó a negociar con la Unión querellante, al no someter al Comité de Relaciones Obreras creado por el convenio colectivo firmado el 7 de julio de 1959 y cuya vigencia se extiende desde el 1ro. de enero de 1959 hasta el 31 de diciembre de 1962, por lo que incurrió y está al presente incurriendo en una práctica ilícita dentro del significado del Artículo 8 (1) (d) de la Ley.

" . . . . . . . .

"11—Por su conducta al rehusar negociar el 21 de julio de 1959 y en fechas subsiguientes con la representante exclusiva de sus empleados en una unidad apropiada, a pesar de haber sido requerido a ello, el patrono querellado intervino con, restringió a y ejerció coerción sobre o intentó intervenir con, restringir a o ejercer coerción sobre sus empleados en el ejercicio de los derechos garantizados por el Artículo 4 de la Ley, por lo cual incurrió y está al presente incurriendo en una práctica ilícita de trabajo dentro del significado del Artículo 8 (1) (a) de la Ley."

En 16 de septiembre de 1960 la Junta dictó su "Decisión y Orden". Resolvió que Cuadrado por sí o a través de la unión querellante no cumplió con las exigencias pertinentes del convenio colectivo vigente al momento de su separación y por consiguiente la Autoridad querellada no incurrió en los actos imputádoles en la querella. Resolvió además que la querellada no violó el convenio colectivo vigente desde el 1ro. de enero de 1959 hasta el 31 de diciembre de 1962 ni tampoco incurrió en una negativa a negociar con la unión querellante según se le imputa en la querella. En armonía con estas determinaciones la Junta desestimó la querella.

El recurrente imputa a la Junta haber cometido los siguientes errores:

"(1) Al resolver que el Artículo XIII inciso (D) del convenio colectivo que expiró el 31 de diciembre de 1956, era aplicable al recurrente Francisco Cuadrado.

"(2) Al resolver que la querellada no violó el convenio colectivo que se firmó el 15 de abril de 1957 que estuvo vigente

desde el primero de enero de 1957 hasta el 31 de diciembre del 1958.

"(3) Al resolver que la querellada no violó el convenio colectivo firmado el 7 de julio de 1959, retroactivo al primero de enero de dicho año y que habrá de expirar el 31 de diciembre de 1962.

"(4) Al resolver que la querellada no incurrió en una negativa a negociar con la Unión querellante como se le imputa en la querella; y

"(5) Al desestimar la querella."

Discutiendo el primer error, el peticionario Cuadrado sostiene que como su caso surgió en el año 1958, no le era aplicable el convenio colectivo que expiraba el 31 de diciembre de 1956, ni sus disposiciones procesales. Argumenta que por esta razón el Comité de Quejas y Agravios creado por dicho convenio no tenía jurisdicción sobre su caso. Asimismo alega que como su caso fue resuelto por un representante de la Unión y otro de la Autoridad no podía llevarlo ante el referido comité, quedando así huérfano de remedio alguno a pesar de haberse consagrado en los convenios el derecho constitucional del debido procedimiento de ley. Veamos las disposiciones pertinentes de ambos convenios.

El convenio firmado entre la Autoridad y la Unión en 15 de abril de 1957 estuvo vigente hasta el 31 de diciembre de 1958. Bajo la vigencia de este convenio ocurrió el despido de Cuadrado. En su Artículo XXII dicho convenio disponía lo siguiente:

## "ARTICULO XXII
### "(Ajuste de Controversia)

"A. El derecho a ser escuchado y a presentar evidencia que estime necesaria para defenderse cuando se le aplican sanciones disciplinarias o se formulen cargos que puedan traer controversias sobre la forma en que se interpretan y aplican las disposiciones contractuales es reconocido como fundamental para la vida misma de este convenio y el mantenimiento de la paz industrial.

"B. Las partes convienen en que las quejas iniciadas entre el obrero individualmente y su supervisor inmediato deben ser discutidas y arregladas entre ambos sin necesidad de procedimientos escritos a la mayor brevedad y rigiéndose por los cánones reconocidos que aseguren la dignidad para ambas partes. Si no llegaren a un acuerdo satisfactorio, la parte quejosa debe llevar el caso ante su representante.

"C. Los representantes de ambas partes entenderán rápidamente en el ajuste de la controversia suscitada y tratarán de llegar a un acuerdo que tendrá efecto final. Cada representante mantendrá informado a su representado del progreso de los procedimientos y en caso de que no se pongan de acuerdo se lo informará por escrito.

"D. Cuando un caso no sea resuelto, la parte quejosa lo llevará en alzada al Comité de Quejas y Agravios según se dispone en el Inciso F de este artículo. La decisión, mediante acuerdo del Comité de Quejas y Agravios, será final.

*Las partes convienen en que, mientras se establece el reglamento según se dispone en este mismo inciso, el Comité actual seguirá operando y rigiéndose bajo las normas y disposiciones creadas por el convenio que expiraba en diciembre 31 de 1956...*" (Énfasis suplido.)

Las partes firmantes no prepararon el reglamento aludido en el convenio de 15 de abril de 1957 para regir al Comité de Quejas y Agravios en sus funciones. Por lo tanto, en virtud de las disposiciones del segundo párrafo del inciso D antes transcrito, el Comité de Quejas y Agravios seguía operando y rigiéndose bajo las normas y disposiciones creadas por el convenio que expiraba en diciembre 31 de 1956. Dichas normas y disposiciones estaban consignadas en el Artículo XIII de dicho convenio, que lee así:

"ARTICULO XIII
"(Comité de Quejas y Agravios)

"A. Por la presente se crea un Comité de Quejas y Agravios que estará integrado por dos representantes designados por la Autoridad y otros dos designados por la Unión. Ante este Comité podrán apelarse las querellas que surjan en relación con las disposiciones de este convenio y que no hubieran sido resueltas por el representante de la Unión y de la Auto-

ridad en cada departamento o división. Este Comité tendrá amplios poderes para hacer cualquier investigación según lo creyere conveniente de los casos que se sometan a su consideración y para resolver los mismos por mayoría. Si con respecto a cualquier querella no pudiera llegar a un acuerdo, este Comité designará por unanimidad un Quinto Miembro y la decisión por mayoría del Comité así constituido será obligatoria para las partes. En caso de que los representantes de la Unión y los representantes de la Autoridad no pudieran ponerse de acuerdo en la selección del Quinto Miembro en los casos de impasse, se sorteará de manera democrática entre las siguientes entidades: Departamento de Justicia, Servicio de Conciliación y Arbitraje y el Comisionado del Trabajo o su representante, a los efectos de que el referido Quinto Miembro pueda llegar a conclusiones justas y rendir un laudo justo, se le someterá el récord taquigráfico de la vista y cualquier otro documento o evidencia que hayan sido consideradas por el Comité o que las partes estimen conveniente. En casos necesarios el Quinto Miembro podrá ampliar las investigaciones realizadas por el Comité que intervino en la vista en la forma que crea conveniente.

"B. En caso de suspensiones ordenadas por la Autoridad, ésta vendrá obligada a someter la querella ante el Comité de Quejas y Agravios dentro de las setenta y dos (72) horas a partir de la fecha de la suspensión, no contando ni los sábados, ni los domingos, ni los días feriados...

"D. Toda querella, queja o agravio excepto las mencionadas en el Inciso 'B' que antecede, deberá ser radicada ante el Secretario del Comité de Quejas y Agravios dentro de un período no mayor de una semana después de conocidos los hechos. Si no fuere radicada dentro de dicho período, la misma quedará automáticamente desestimada."

El caso de Cuadrado no se regía por las disposiciones de los incisos B, C y D del convenio concertado el 15 de abril de 1957. Para despedir de su empleo al peticionario Cuadrado, la Autoridad siguió el trámite establecido en el Artículo XV de dicho convenio. Se recordará que mediante investigación hecha por la Autoridad y la Unión se determinó que Cuadrado estuvo trabajando en labores compensadas para el Hipódromo El Comandante, el día en que sin

autorización se ausentó de su trabajo en la Autoridad. Tal determinación motivó la carta de separación. Sin embargo, si bien puede afirmarse que en la investigación de esos hechos Cuadrado estuvo representado por la Unión, no es menos cietro que no fue oído en relación con dichos hechos. Considerando que el citado Artículo XXII del convenio consagra el derecho del obrero "a ser escuchado y a presentar evidencia que estime necesaria para defenderse cuando se le aplican sanciones disciplinarias o se formulen cargos que puedan traer controversias sobre la forma en que se interpretan y aplican las disposiciones contractuales", opinamos que Cuadrado podía llevar el caso de su separación ante el Comité de Quejas y Agravios; pero como este Comité operaba y se regía por las normas y disposiciones creadas por el convenio que expiró en diciembre 31 de 1956, Cuadrado debió acogerse a dichas normas y disposiciones. No lo hizo. Se limitó a preguntarle verbalmente al Jefe de Personal de la Autoridad si su caso podía llevarse ante el susodicho Comité de Quejas y Agravios recibiendo una contestación negativa. Convenimos con la Junta en que tal actuación de Cuadrado no daba cumplimiento sustancial al Inciso D del convenio que expiró en diciembre 31 de 1956. Su queja o querella, si no estaba conforme con su despido o separación de su empleo, debió radicarla ante el Secretario de Quejas y Agravios, dentro de la semana después de haber recibido la carta de despido. Conforme dispone el citado inciso D si la queja o querella no fuere radicada dentro de un período no mayor de una semana después de conocidos los hechos, la misma quedará automáticamente desestimada. Ante la contestación del Jefe de Personal de la Autoridad en el sentido de que su caso no podía llevarse ante el Comite de Quejas y Agravios, Cuadrado pudo solicitar los servicios de a Unión.(²) No lo hizo, y la prueba pasada ante el Ofi-

---

(²) El agente de negociación está en el deber de representar a todos los miembros de la unidad de negociación colectiva. *Hughes Tool Company* v. *N.L.R.B.*, C.C.A. 5 (1945) 147 F.2d 69.

cial Examinador, demuestra que la Unión, a pesar de que Cuadrado pertenecía a un movimiento de disidencia gremial, estuvo dispuesta a prestarle sus servicios. Pudo también presentar personalmente su querella al Secretario del Comité de Quejas y Agravios dentro del término señalado en el convenio y tampoco lo hizo.(³) Lejos de eso, el querellante utilizó los servicios de otra unión, que no era la representante de los empleados de la Autoridad para radicar un cargo contra ésta ante la Junta por discriminación con la tenencia de su empleo.

■ Por otro lado, como el querellante fue *separado* de su empleo mediante el procedimiento que ya hemos descrito, su caso no está cubierto por el inciso B del Artículo XIII del convenio que expiró en 31 de diciembre de 1956 y que cubre el procedimiento a seguirse en caso de suspensiones. Conforme a dicho inciso en casos de *suspensiones* ordenadas, por la Autoridad, ésta venía obligada a someter la querella ante el Comité de Quejas y Agravios dentro de las 72 horas a partir de la fecha de suspensión. Esta disposición evitaba la prolongada suspensión de un empleado, sin la pronta intervención del Comité de Quejas y Agravios. Pero tratándose de un caso de despido o separación, la Autoridad no venía obligada a someter querella ante dicho Comité.

A nuestro juicio la Junta actuó correctamente al resolver que el Artículo XIII, Inciso (d) del convenio colectivo que expiró el 31 de diciembre de 1956 era aplicable al caso del recurrente Cuadrado y al resolver que la querellada no

---

(³) Bajo la ley —apunta la recurrida— un patrono tiene derecho a despedir a sus empleados por justa causa, o sin causa alguna incluyendo el mero capricho, siempre y cuando no sea por motivaciones unionales. *Labor Board* v. *Jones & Laughlin*, 301 U.S. 1; *Luce & Company, S. en C.* v. *Junta de Relaciones del Trabajo de Puerto Rico*, 71 D.P.R. 360. No habiendo motivaciones gremiales en el caso de Cuadrado, su situación de derecho tiene que estar referida exclusivamente a sus derechos bajo el convenio colectivo y ya hemos señalado que fue el propio Cuadrado, quien se colocó fuera de las garantías del convenio al no utilizar los medios para hacer valer sus derechos. Frank Elkouri, *How Arbitration Works, The Bureau of National Affairs, Inc.*, pág. 85.

violó el convenio colectivo que se firmó en 15 de abril de 1957, con vigencia desde el 1ro. de enero de 1957 hasta el 31 de diciembre de 1958. Los primeros errores no fueron cometidos.

Tampoco incurrió la Junta en el tercer error al resolver que la querellada no violó el convenio colectivo firmado el día 7 de julio de 1959, retroactivo al primero de enero de dicho año y con vigencia hasta el 31 de diciembre de 1962.

Este señalamiento se funda en que la Autoridad querellada se negó a reunirse con el Comité de Relaciones Obreras (creado en el convenio de 1959) a discutir el caso de Cuadrado cuando la Junta la requirió para ello el 21 de julio de 1959.

Sabemos que el despido de Cuadrado ocurrió durante la vigencia del convenio que expiró el 31 de diciembre de 1958. Sin embargo, la mera expiración del convenio, no liberaría de responsabilidad a la querellada si ella incurrió en una violación de la Ley al negarse a discutir el caso de Cuadrado ante el Comité de Quejas y Agravios. Pero su responsabilidad nace de la violación del convenio bajo el cual surgen los hechos.[4] Al convenio firmado en el 1959, no se le dió vigencia retroactiva ni cubría los casos surgidos con anterioridad a su vigencia. Por lo tanto la Autoridad no incurría en una violación del convenio de 1959 al negarse a someter a discusión el caso del querellante, ni por ende, en una violación de la Ley. Esto nos lleva a la consideración del cuarto error.

El nervio de este señalamiento es que la Junta se negó a resolver que la querellada violó el convenio colectivo firmado el 7 de julio de 1959 cuando rehusó someter, una vez la Unión querellante así lo requirió el 21 de julio de 1959, al Comité de Relaciones Obreras, el caso de la separación del empleado Francisco Cuadrado. El Oficial Examinador

---

[4] Véase *Knight Morley Corp.*, 116 N.L.R.B. No. 6, 38 L.R.R.M. 1194; *Textile Workers* v. *Lincoln Mills of Alabama*, 36 L.R.R.M. 2361.

lo había resuelto así y en su consecuencia determinó que la querellada había incurrido y estaba incurriendo en una práctica ilícita de trabajo dentro del significado del Art. 8(1) (f) de la Ley.(⁵) Resolvió además dicho Oficial que el patrono, al negarse a negociar con la Unión al no someter el caso de Cuadrado al Comité de Relaciones Obreras, había incurrido en una práctica ilícita dentro del significado del Art. 8(1) (d) de la Ley.(⁶)

 La Junta no estuvo de acuerdo con estas conclusiones y las revocó.

La negativa a arbitrár una disputa, según sostiene la Junta, no constituye de por sí una negativa a negociar y por tanto una violación de la Ley. *Textron Puerto Rico*, 107 N.L.R.B. No. 42 (1953) 33 L.R.R.M. 1194; *United Telephone Co. of the West*, 112 N.L.R.A. No. 103 (1955) 36 L.R.R.M. 1097. Si al negarse a negociar, el patrono no actúa de mala fe no incurre en una violación de la Ley. En este caso la Unión no requirió al patrono para negociar la interpretación de las cláusulas del convenio colectivo. Su requerimiento fue para que se discutiera el caso de Cuadrado y se permitiera a éste presentar prueba en su defensa. Esto lo hizo la Unión cuando ya había transcurrido cerca de un año desde la separación de Cuadrado, o sea, cuando

---

(⁵) El inciso (1) (f) del Art. 8 de la Ley dispone:

"(1) Será práctica ilícita de trabajo el que un patrono, actuando individualmente o concertadamente con otros:

"(f) Viole los términos de un convenio colectivo, incluyendo un acuerdo en el que se comprometa a aceptar un laudo de arbitraje, esté o no dicho acuerdo incluido en los términos de un convenio colectivo; *Disponiéndose, sin embargo,* que la Junta podrá declarar sin lugar cualquier cargo en el cual se alegue una violación de este inciso, si la unión que es parte en el contrato es culpable de una violación en curso del convenio o no ha cumplido con una orden de la Junta relativa a alguna práctica ilícita de trabajo, según lo dispone este subcapítulo."

(⁶) El apartado (d) del inciso (1) del Art. 8 dispone:

"(d) Rehuse *negociar colectivamente con el representante* de una mayoría de sus empleados en una unidad apropiada de negociación colectiva, sujeto a las disposiciones de la sec. 66 de este título. (29 L.P.R.A. sec. 69.)

ya la queja o querella de Cuadrado, había quedado automáticamente desestimada a virtud de las disposiciones del propio convenio bajo el cual surgieron los hechos. En tales circunstancias tenemos que convenir con la Junta en que la querellada no se negó a negociar cuando la Unión quiso que se reabriera el caso de Cuadrado para ser discutido ante el Comité de Quejas y Agravios. *Cf. United Telephone Co.*, supra; *Consolidated Aircraft Corp.*, 47 N.L.R.B. 699 (1943) 12 L.R.M.M. 44; *Timken Roller Bearing Co.* v. *N.L.R.B.*, 161 F.2d 949.

*Debe confirmarse la Decisión y Orden de la Junta.*