BERANEK, Judge.
Appellant seeks reversal of summary dismissals of his unfair labor practice charges filed against The School Board of Broward County and the Broward County Classroom Teachers Association before the Public Employees Relations Commission. The Commission summarily dismissed appellant’s charges. We affirm.
Appellant is a public school teacher in the Broward County school system. He is not a member of the Broward County Classroom Teachers Association, which is an employee organization under Chapter 447, Florida Statutes. The Classroom Teachers Association and the School Board are parties to a collective bargaining agreement governing the teachers of Broward County. Appellant filed a grievance claiming that he had not been properly paid for certain overtime work. The Classroom Teachers Association refused to process appellant’s grievance through the arbitration step provided for in the collective bargaining agreement. The agreement gave the certified bargaining agent control over the final arbitration step in the three step grievance procedure. The Classroom Teachers Association found that appellant’s grievance lacked merit and refused to process it through the arbitration stage. The union did not base its refusal on appellant’s nonunion status. Appellant was thereby foreclosed from arbitration and filed an unfair labor practice charge with the Public Employees Relations Commission which summarily dismissed the charge. The present appeal results.
Although numerous issues are raised, we conclude that only one presents arguable merit. Appellant contends that he cannot be legally foreclosed from arbitration under Section 447.401, Florida Statutes (1979). This precise question was presented and decided adversely to appellant in Heath v. School Board of Orange County, 5 FPER 10074 (1979), and In Re Leon County School Board, 7 FPER 12286 (1981). The question, simply put, is whether a union may refuse to process nonunion public employees’ grievances through the arbitration stage of the statutorily required grievance procedures prescribed by Section 447.401, Florida Statutes (1979). In the case of In Re Leon County School Board, 7 FPER 12286 (1981), the Commission stated the question as follows:
Where the certified bargaining agent retains contractual control over the arbitral step of the grievance procedure and it declines to process a grievance to arbitration because it believes the grievance to be without merit, is the public employer still obligated to arbitrate the dispute if the grievant submits it to arbitration because the certified bargaining agent has declined to “represent” the grievant?
The Commission answered this question in the negative in an opinion which is produced verbatim herein. [See Appendix.]
Substantially the same question was discussed at length in the majority and dissenting opinions filed by the Commission in Heath v. School Board of Orange County, supra. The views expressed in the Heath majority opinion and in the later “Declaratory Statement” in the Leon County School Board case are hereby adopted by this Court in our present affirmance of the sum *839 mary dismissal of appellant’s unfair labor practice charges.
Deeming the above stated question to be of great public importance, we answer it in the negative and certify same to the Supreme Court.
AFFIRMED.
DOWNEY and ANSTEAD, JJ., concur.
APPENDIX
Leon County School Board
Decision of PERC
In re Petition for Declaratory Statement of the School Board of Leon County.
Case No. DS-81-001, 81D-238
June 26, 1981
Before Powers, Chairman; Parrish and Brooks, Commissioners
DECLARATORY STATEMENT
POWERS, Chairman. On February 5, 1981, the School Board of Leon County filed a petition for declaratory statement[1] pursuant to Section 447.207(7), Florida Statutes (1979), and Florida Administrative Code Rule 38D-22.02. Notice of the petition was published in the Florida Administrative Weekly on March 6, 1981, in compliance with Section 120.565, Florida Statutes (1979).
On March 26,1981, both the Leon County Classroom Teachers Association, FTP/NEA (LCTA or Association) and the Florida Education Association/United, AFT, AFL-CIO, (FEA) filed memoranda in support of their respective positions.
The School Board requests that the Commission answer the following questions:
Where the certified bargaining agent retains contractual control over the arbitral step of the grievance procedure and it declines to process a grievance to arbitration because it believes the grievance to be without merit, is the public employer still obligated to arbitrate the dispute if the grievant submits it to arbitration because the certified bargaining agent has declined to “represent” the grievant? Does the answer to the above question depend on whether or not the grievant is a member of the certified bargaining agent? If so, how?
According to the petition, the LCTA is the certified bargaining agent for a unit of instructional employees employed by the School Board of Leon County. The grievance procedures set forth in Article VI of the current collective bargaining agreement between the LCTA and the School Board allows all instructional employees to file a grievance at Step I, but reserves to the LCTA the exclusive authority to advance the grievance to Steps II, and III, the latter step being the arbitration provision.[2]
On September 30, 1980, Freddie 0. Had-ley, an instructional employee within the certified bargaining unit who is not a member of the LCTA, individually filed a grievance against the School Board asserting that she did not receive a timely payment of her monthly salary as required by the terms of the collective bargaining agreement. After Hadley’s supervisor denied the grievance at Step I, the LCTA intervened at Step II of the grievance procedure and submitted her grievance to the Director of Employee Relations, the Superintendent’s designee. On November 18, 1980, the Director denied the grievance.
By letter dated December 2, 1980, the LCTA informed Hadley of its decision not to submit her grievance to arbitration. The letter advised the grievant, in pertinent part, that:
Based on advice from General Counsel, LCTA has decided not to process your geievance to arbitration. In both his opinion and mine, the contract has not *840 been violated as set forth in your grievance.

Ms. Hadley, I feel that I must express one final thought in this letter. LCTA is taking exactly the same care with your grievance as we do with the grievances of our members, who pay their dues to provide for all teachers (emphasis in original).
On December 12, 1980, Hadley advised the School Board of her intent to individually submit the grievance to arbitration. The grievant thereafter filed a demand for arbitration with the American Arbitration Association.
Resolution of the questions presented requires an examination of the Commission’s decisions in Heath v. School Board of Orange County, 5 FPER ¶ 10074 (1979) and Leon County CTA v. Leon County School Board, 6 FPER ¶ 11001 (1979). In Heath, the Commission concluded that the Orange County School Board did not unlawfully refuse to process a grievance by failing to arbitrate a grievance brought by an individual employee where the collective bargaining agreement provided that grievances could be submitted to arbitration only by the certified bargaining agent. Similarly, in Leon County CTA, the Commission determined that the School Board violated Section 447.501(1)(a), (c) and (f), Florida Statutes (1979), by processing individual employee grievances to arbitration in derogation of the collective bargaining agreement which provided that only the LCTA could submit grievances to arbitration.
The underlying rationale in both cases turned upon the well-established principal of exclusive representation embodied in Section 447.307(3)(b), Florida Statutes (1979), which provides, in pertinent part, that the certified agent shall act as “the exclusive collective bargaining representative of all employees in the unit.” The principle of exclusivity, as the Commission recognized in Heath, is essential to the advancement of labor stability:
The designation of a single representative avoids the confusion that would result from attempting to enforce two or more agreements specifying different terms and conditions of employment. It prevents inter-union rivalries from creating dissension within the work force and eliminating the advantages to the employee of collectivization. It also frees the employer from the possibility of facing conflicting demands from different unions, and permits the employer and a single union to reach agreements and settlements that are not subject to attack from rival labor organizations.
5 FPER ¶ 10074 at 91, quoting from Abood v. Detroit Board of Education, 431, U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977).
The Commission also recognized in Heath that the determination of terms and conditions of employment does not end when the parties enter into a collective bargaining agreement. Rather, the interpretation of the agreement through the grievance arbitration procedure may also have a significant impact on the unit employees’ terms and conditions of employment. The principle of exclusivity applies not only to the negotiation of a collective bargaining agreement but also to the administration of the agreement through the grievance-arbitration procedure. 5 FPER ¶ 10074 at 91. Consequently, a certified bargaining agent may negotiate a provision whereby it retains ultimate control over the grievance-arbitration machinery. In reaching this policy determination in Heath we found the rationale enunciated by the United States Supreme Court in Vaca v. Sipes, 386 U.S. 171, 191, 87 S.Ct. 903, 917, 17 L.Ed.2d 842 (1969), particularly compelling:
In providing for a grievance and arbitration procedure which gives the union discretion to supervise the grievance machinery and to invoke arbitration, the employer and the union contemplate that each will endeavor in good faith to settle grievances short of arbitration. Through this settlement process, frivolous grievances are ended prior to the most costly and time-consuming step in the grievance procedures. Moreover, both sides are assured that similar complaints will be *841 treated consistently, and major problem areas in the interpretation of the collective bargaining contract can be isolated and perhaps resolved. And finally, the settlement process furthers the interest of the union as statutory agent and as coauthor of the bargaining agreement in representing the employees in the enforcement of that agreement.
A union’s right to exclusivity over the administration of a collective bargaining agreement includes not only the right to settle a grievance short of arbitration, but also the right to decline to process a grievance when it believes the grievance lacks merit.[3] In either case, the union is deemed to have represented the grievant even though the grievance was not pursued to the final stage of the procedure, binding arbitration. Once the bargaining agent chooses to represent a grievant, regardless of the grievant’s union membership status, the manner with which it handles the grievance, including a decision not to process the grievance for lack of merit, is subject to the statutory duty of fair representation. See Heath v. School Board of Orange County, 5 FPER ¶ 10074 (1979); Gow v. AFSCME, Local 1316, 4 FPER ¶ 4168 (1978).
However, unlike other jurisdictions, Florida law permits a certified bargaining agent to refuse to represent a grievant who is not a member of the certified organization. Section 447.401, Florida Statutes (1979), provides, in pertinent part:
All public employees shall have the right to a fair and equitable grievance procedure, administered without regard to membership or nonmembership in any organization, except that certified employee organizations shall not be required to process grievances for employees who are not members of the organization. (Emphasis added)
The Commission has concluded that this provision does not serve as a limitation upon the certified bargaining agent’s exclusive right of representation. Heath v. School Board of Orange County, 5 FPER ¶ 10074 at 92. Rather, the proviso simply affords the organization the right to determine whether it desires to exercise its right of exclusive representation on behalf of nonmembers.
When a certified bargaining agent declines to represent a grievant because he or she is not a member of the certified organization, the grievant is entitled to pursue the grievance to arbitration, and the public employer is under a concomitant obligation to process the grievance in accordance with the terms set forth in the agreement. See generally, Blanchett v. School Board of Leon County, 378 So.2d 68 (Fla. 1st DCA 1979); Manatee County Municipal Employees Local 1584 v. Manatee County School Board, 6 FPER ¶ 11188 (1980). Therefore, the grievant’s right to a fair and equitable grievance procedure mandated by Section 447.401 is protected by allowing the griev-ant to either represent himself or to seek outside representation, for the purpose of pursuing the grievance in accordance with the procedures set forth in the collective bargaining agreement.
FEA’s argument on this point is based upon an interpretation of Section 447.-301(4), Florida Statutes (1979), which we expressly rejected in Heath. Our rejection of the proposition that Section 447.301(4) guarantees an individual unfettered access to the arbitral process is supported by the substantial weight of authority in other jurisdictions interpreting statutory provisions which are identical in all material respects to Section 447.301(4) in both language and policy. Heath v. School Board of Orange County, 5 FPER ¶ 10074 at 91-93; Maggs v. PLRB, 11 PPER ¶ 11103 (Pa.Comm.Ct.1980). We therefore decline the FEA’s implicit invitation to recede from our previous interpretation of Section 447.301(4) because we find it patently illogical that the Legislature would have adopted practically verbatim the language of a long standing fed *842 eral statute but have intended an interpretation which is exactly the opposite of the interpretation given the federal statute as long ago as 1944.[4] As we have previously noted, the policy considerations which underlie the interpretation of the federal statute apply with equal force to the Florida public sector collective bargaining scheme.
It is inconsistent to require, on the one hand, an exclusive bargaining agent to fairly represent all bargaining unit employees in collective bargaining negotiations and administration of a collective bargaining agreement and, on the other hand, to allow individual employees to advance grievances which may assert an interpretation of that agreement contrary to that of the bargaining agent and possibly the employer. Under such a scheme, the bargaining agent’s status as exclusive representative in the determination of wages, hours and terms and conditions of employment is emasculated because the employer would be required to process through arbitration every individual grievance upon request, regardless of merit. Such individual grievance processing is in effect individual negotiations between the employer and the employee regarding the subject matter of the grievance. The Florida courts have long recognized the inherently destructive effect that individual negotiations between employer and employees have upon the right to collectively bargain. Pasco County School Board v. PERC, 353 So.2d 108, 4 FPER ¶ 4033 (Fla. 1st DCA 1977). Such individual negotiations are no less destructive simply because they occur during the grievance process rather than at the negotiating table.[5]
There are also important practical reasons for limiting access to the arbitration machinery of contractual grievance procedures. Unlimited individual access would allow every employee, regardless of motive, to compel arbitration proceedings where the parties who negotiated the collective bargaining agreement deemed such proceedings unwarranted. The potential for harassment of the union and the employer, to the detriment of all concerned, from disgruntled individuals is very real. See e.g., Black-Clawson Co., Inc. v. International Association of Machinist, Lodge 355, 313 F.2d 179, 196 (5th Cir.1962). Furthermore, one need not be very experienced in labor relations to realize the attractiveness to a rival or a minority union of being able to compete with the incumbent union for by indirectly processing grievances, regardless of merit, through an individual member. See McGuire Public Employee Collective Bargaining In Florida—Past, Present and Future, Fla.State L.Rev. 26, 101-02 (1973).
Finally, the policy we have adopted protects the taxpayer from the compulsory but unnecessary expenditure of public funds, a policy consideration not present in the private sector. If individual employees may, at their whim, compel arbitration of all grievances regardless of merit and contrary to the desires of the employer and the bargaining agent, significant public funds will be spent on expensive arbitration proceedings which would otherwise not be expended. The parties to the collective bargaining agreement would therefore have less funds available for truely meritorious grievances and the employer might be compelled to settle non-meritorious grievances contrary to a reasonable interpretation of the collective bargaining agreement to avoid expense, thereby establishing an erroneous precedent applicable to subsequent grievances. The interference with the statutory *843 goal of promoting harmonious and cooperative relationships between the government and its employees who have chosen to bargain collectively, which would occur if the FEA’s position were adopted, is accurately summarized by the following language from Vaca v. Sipes, 386 U.S. at 191-92, 87 S.Ct. at 917-18:
If the individual employee could compel arbitration of his grievance regardless of its merit, the settlement machinery provided by the contract would be substantially undermined, thus destroying the employer’s confidence in the union’s authority and returning the individual grievant to the vagaries of independent and unsystematic negotiation. Moreover, under such a rule, a significantly greater number of grievances would proceed to arbitration. This would greatly increase the cost of the grievance machinery and could so overburden the arbitration process as to prevent it from functioning successfully.
Contrary to FEA’s assertion, then, the Commission’s decision in Heath does not stand for the proposition that an individual has the unfettered right to advance a grievance through the contractual grievance procedure once the certified bargaining agent has exercised its exclusive right to discontinue processing the grievance based upon its good faith determination that the grievance lacks merit. As the above discussion demonstrates, such a conclusion is the antithesis of the concept of exclusively embraced by our decision in Heath. 5 FPER ¶ 10074 at 92. Accordingly, where the parties collective bargaining agreement reserves to the certified bargaining agent the exclusive right to submit grievances to arbitration, a public employer is not obligated to process an individual’s grievance to arbitration if the certified bargaining agent has declined to advance the grievance because of its belief that the grievance lacks merit. Indeed, if the public employer does process such a grievance to arbitration at the individual’s request it might well violate Section 447.501(1)(a), (c), Florida Statutes (1979). Such action could constitute circumvention of the bargaining agent and a unilateral alteration of the contractual grievance procedure. Leon County CTA v. Leon County School Board, 6 FPER ¶ 11001 at 4.
In this case the facts establish that the collective bargaining agreement grants all unit employees the opportunity to file grievances at Step I, but reserves to the LCTA the exclusive authority to advance these grievances to Step II through the final arbitrable step. The LCTA refused to process Hadley’s grievance to arbitration following its express determination that the grievance lacked merit. Under these circumstances, irrespective of Hadley’s membership or non-membership in the LCTA, the Association’s actions do not constitute a waiver of its right to exclusively determine those grievances appropriate for arbitration. Therefore, the School Board is not obligated to proceed to arbitration upon Hadley’s request.
It is so ordered.

. The School Board included in the petition a motion to stay the grievance/arbitration proceedings pending resolution of this matter, which was denied by the Commission. In re School Board of Leon County, 7 FPER ¶ 12119 (1980).

. By its terms the agreement is in effect from August 21, 1979 through August 20, 1982.

. See Turner v. Air Transport Dispatchers’ Ass’n., 468 F.2d 297, 300 (5th Cir.1972); St. Clair v. Local Union No. 515, 1 BT, 422 F.2d 128, 130 (6th Cir.1969); Maggs v. PLRB, 11 PPER ¶ 11103 (Pa.Comm.Ct.1980); Russell v. Patterson, 10 PERB ¶ 7511 (N.Y.App.Div.1976); Norton v. Transportation Authority, 90 LRRM 3054 (Mass.S.Ct.1975).

. Hughes Tool Company, 56 NLRB 981, 14 LRRM 244 (1944) enforced 147 F.2d 69 (5th Cir.1945) construing Section 9(a) of the National Labor Relations Act.

. For a discussion of the reasons that grievance processing in contract administration are considered as part of the collective bargaining process itself see Cox, Reflections Upon Labor Arbitration, 72 Har.L.Rev. 1482. As the United States Supreme Court stated in Conley v. Gibson, 355 U.S. 41, 45, 46, 78 S.Ct. 99, 101, 102, 2 L.Ed.2d 80 (1957);
Collective bargaining is a continuing process. Among other things, it involves day-to-day adjustments in the contract and other work rules, resolution of new problems not covered by existing agreements, and the protection of employee rights already secured by contract.