DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**THE CITY OF MIRAMAR, FLORIDA,** and **DELRISH MOSS,**
Appellants,

v.

**FLORIDA STATE LODGE FRATERNAL ORDER OF POLICE, INC.,** and
**LEONARDO BRAGA,**
Appellees.

No. 4D2025-1311

[June 3, 2026]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; William W. Haury, Jr., Judge; L.T. Case No. 062024CA014072AXXXCE.

Michelle Austin Pamies and Jordan Kira Gary of Austin Pamies Norris Weeks Powell, PLLC, Fort Lauderdale, for appellants.

Rose Szikszay and Paul Daragjati of Paul Daragjati PLC, Jacksonville, for appellees.

FORST, J.

Appellants, the City of Miramar ("the city") and Miramar Police Department Chief Delrish Moss, appeal the trial court's declaratory judgment that section 286.011(1), Florida Statutes (2024), requires arbitration hearings between a public employer and a public employee union to be open to the public. Appellants argue the trial court misinterpreted the statute's plain language. We agree and reverse.

**Background**

Appellee Leonardo Braga was disciplined by the Miramar Police Department after an investigation determined he had violated the department's policies. Appellee Florida State Lodge Fraternal Order of Police, Inc. ("the union"), filed a grievance pursuant to the Collective Bargaining Agreement ("CBA") between the city and the union. The city denied the grievance.

The union demanded arbitration of the grievance pursuant to the CBA, and an arbitration hearing was scheduled. The parties disagreed about whether the hearing should be open or closed to the public. The union demanded that other union members be allowed to attend the hearing, while the city refused to proceed with the other union members present.

The union filed a petition in the trial court seeking a declaratory judgment. The trial court held a hearing and entered judgment for the union, ruling that labor arbitration hearings conducted pursuant to a public employee CBA are required to be open to the public pursuant to section 286.011(1). This appeal follows.

## Analysis

We review issues of statutory interpretation de novo. *E.g.*, *Bd. of Trs., Jacksonville Police & Fire Pension Fund v. Lee*, 189 So. 3d 120, 123 (Fla. 2016). "In interpreting a state statute or rule, a state court . . . may not defer to an administrative agency's interpretation of such statute or rule, and must instead interpret such statute or rule de novo." Art. V, § 21, Fla. Const.

"Florida courts 'follow the supremacy-of-text principle—namely, the principle that the words of a governing text are of paramount concern, and what they convey, in their context, is what the text means.'" *State v. Washington*, 403 So. 3d 465, 470 (Fla. 6th DCA 2025) (quoting *Ham v. Portfolio Recovery Assocs., LLC*, 308 So. 3d 942, 946 (Fla. 2020)). "Thus, we interpret Florida's constitution and statutes according to the plain meaning of their text, looking to 'all the textual and structural clues that bear on the meaning of a disputed text' and using the traditional interpretive canons for guidance where helpful." *Id.* (quoting *Conage v. United States*, 346 So. 3d 594, 598 (Fla. 2022)).

I.  **Section 286.011(1) does not *require* arbitrations to be open to the public because an arbitrator is not a "board or commission."**

All meetings of any board or commission of any state agency or authority or of any agency or authority of any county, municipal corporation, or political subdivision, except as otherwise provided in the Constitution, including meetings with or attended by any person elected to such board or commission, but who has not yet taken office, at which official acts are to be taken are declared to be public meetings open to the public at all times, and no resolution, rule, or formal

2

> action shall be considered binding except as taken or made at such meeting.

§ 286.011(1), Fla. Stat. (2024); *see also* Art. I, § 24(b), Fla. Const.[1]

Section 286.011(1)'s plain text applies only to meetings of boards or commissions. "One of the most fundamental tenets of statutory construction requires that we give statutory language its plain and ordinary meaning, unless the words are defined in the statute or by the clear intent of the legislature. If necessary, the plain and ordinary meaning of the word can be ascertained by reference to a dictionary." *Green v. State*, 604 So. 2d 471, 473 (Fla. 1992) (internal citation omitted). *See also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 174 (1st ed. 2012) (the "surplusage canon" holds that, "[i]f possible, every word and every provision is to be given effect . . . None should be ignored. None should be given an interpretation that causes it to . . . have no consequence.").

Here, section 286.011(1) is directed to "meetings of any board or commission." A "board" is a "group of persons having managerial, supervisory, or advisory powers." *Board, Black's Law Dictionary* (12th ed. 2024). A "commission" is a "body of persons acting under lawful authority to perform certain public services." *Commission, Black's Law Dictionary* (12th ed. 2024). On the other hand, an "arbitrator" is a "neutral person who resolves disputes between parties, esp[ecially] by means of formal arbitration." *Arbitrator, Black's Law Dictionary* (12th ed. 2024).

By definition, then, an arbitrator is one person, while boards and commissions are groups of persons. Appellees concede that an arbitrator is not a "board" or "commission." Because an arbitration proceeding by a sole arbitrator is not a "meeting" of a "board or commission," section 286.011(1) does not apply to an arbitration proceeding. *See Dascott v. Palm Beach Cnty.*, 877 So. 2d 8, 11 (Fla. 4th DCA 2004) ("The critical issue in this case is whether the panel that deliberated on the subject of appellant's discipline and termination was a 'board' or 'commission' within the meaning of the Sunshine Act."); *City of Sunrise v. News & Sun-Sentinel Co.*, 542 So. 2d 1354, 1355–56 (Fla. 4th DCA 1989).

---

[1] "All meetings of any collegial public body of the executive branch of state government or of any collegial public body of a county, municipality, school district, or special district, at which official acts are to be taken or at which public business of such body is to be transacted or discussed, shall be open and noticed to the public and meetings of the legislature shall be open and noticed . . . ."

**II.     Section 447.605(2), Florida Statutes (2024), does not require arbitrations to be open to the public because an individual employee's arbitration hearing is not within the definition of "collective bargaining negotiations."**

"The collective bargaining negotiations between a chief executive officer, or his or her representative, and a bargaining agent shall be in compliance with the provisions of s. 286.011." § 447.605(2), Fla. Stat. (2024).

Section 447.203(14), Florida Statutes (2024), defines "collective bargaining" as "the performance of the mutual obligations of the public employer and the bargaining agent of the employee organization to meet at reasonable times, to negotiate in good faith, and to execute a written contract with respect to agreements reached concerning the terms and conditions of employment, except that neither party shall be compelled to agree to a proposal or be required to make a concession unless otherwise provided in this part." § 447.203(14), Fla. Stat. (2024).

The statutory text uses three verbs in its definition of "collective bargaining": meet, negotiate, and execute. In short, "collective bargaining" is the process of meeting and negotiating to execute a written CBA. Notably, this statutory definition does not encompass the administration of the executed CBA or the adjudication of disputes pursuant to that CBA.

Moreover, section 447.605(2)'s text does not require every activity within the definition of "collective bargaining" to be conducted in public. Instead, the statute limits that requirement to "collective bargaining *negotiations*." This is a narrower category, as evidenced by the statute's use of the adjunctive phrase, "to negotiate in good faith, *and* to execute a written contract," which suggests the execution of the contract is an additional step beyond the negotiation step. The statute does not separately define "negotiate" or "negotiation." Black's Law Dictionary defines "negotiation" as a "consensual bargaining process in which the parties attempt to reach agreement on a disputed or potentially disputed matter. Negotiation usu[ally] involves complete autonomy for the parties involved, without the intervention of third parties." *Negotiation, Black's Law Dictionary* (12th ed. 2024).

In contrast, arbitration is a "dispute-resolution process in which the disputing parties choose one or more neutral third parties to make a final and binding decision resolving the dispute." *Arbitration, Black's Law Dictionary* (12th ed. 2024). Negotiation is characterized by autonomy for the parties without the intervention of third parties, while arbitration's defining characteristic is the intervention of a third party. As such, the

4

definition of "negotiation" does not include "arbitration."

Because an arbitration hearing is not "collective bargaining negotiations" as defined by statute, section 447.605(2) does not require that an arbitration hearing be held in compliance with section 286.011.

### III.  The *Galbreath* cases do not compel a contrary result.

In urging us to hold otherwise, the union points to statements in *Galbreath v. School Board of Broward County*, 424 So. 2d 837 (Fla. 4th DCA 1982) ("*Galbreath I*").  In *Galbreath I*, we held that a union whose CBA grants it the exclusive right to submit grievances to arbitration cannot be forced to submit a nonunion employee's grievance to arbitration if it believes the grievance to be without merit.  *Id.* at 838–39.  In doing so, we attached a substantial portion of a Public Employees Relations Commission ("PERC") opinion as an appendix and stated the "views expressed" therein were "hereby adopted by this Court."  *Id.* at 838–43 (citing *In Re Leon Cnty. Sch. Bd.*, 7 FPER 12286 (1981)).  The Florida Supreme Court reviewed and approved our opinion while approving "portions of *In re Leon County School Board,* set out in the appendix of the opinion under review, as dispositive of the issues presented in the certified question."  *Galbreath v. Sch. Bd. of Broward Cnty.*, 446 So. 2d 1045, 1047–49 (Fla. 1984) ("*Galbreath II*").

The *Galbreath* cases analyzed the principle of exclusive representation codified in section 447.307(3)(b), Florida Statutes (1979), explaining that the "principle of exclusivity applies not only to the negotiation of a collective bargaining agreement but also to the administration of the agreement through the grievance-arbitration procedure."  *Galbreath I*, 424 So. 2d at 840 (quoting *In Re Leon Cnty. Sch. Bd.*).  We (by adoption) further explained the inconsistency of requiring "an exclusive bargaining agent to fairly represent all bargaining unit employees in collective bargaining negotiations and administration of a collective bargaining agreement" while at the same time letting individual employees assert interpretations of a CBA "contrary to that of the bargaining agent," because such individual grievance processing "is in effect individual negotiations between the employer and the employee regarding the subject matter of the grievance" that could undermine a union's "status as exclusive representative" and constitute an impermissible "unilateral alteration of the contractual grievance procedure."  *Id.* at 842–43 (quoting *In Re Leon Cnty. Sch. Bd.*).

Several reasons explain why the *Galbreath* cases do not govern our interpretation of sections 286.011(1) or 447.605(2) here.  First, the

*Galbreath* cases did not purport to interpret those statutes. The cases instead analyzed two different statutes: sections 447.307(3)(b) and 447.301(4), Florida Statutes (1979). *See Galbreath I*, 424 So. 2d at 840–42. Second, neither of those statutory provisions includes the words "negotiation" or "negotiations," and the analyses did not purport to define those words. The analogy between grievance processing and negotiation was a functional analogy, not one of textual definition. Third, *Galbreath I* expressly distinguishes between "the *negotiation* of a collective bargaining agreement" and "the *administration* of the agreement through the grievance-arbitration procedure[,]" which supports our definitional distinction between those collective bargaining concepts. *See id.* at 840.

In sum, the *Galbreath* holdings do not conflict with our textualist interpretation of sections 286.011(1) and 447.605(2).

## Conclusion

For the foregoing reasons, we hold that section 286.011(1) does not compel an arbitrator to open an arbitration hearing between a public employer and a public employee union to the public.

Let us be clear about the limits of our holding. We do not hold that an arbitrator *cannot* open an arbitration hearing to the public, nor do we hold that employers and unions cannot negotiate a CBA term requiring arbitration hearings to be open. Nor are we suggesting that the public cannot access transcripts of such arbitrations. While the latter issue is not properly before us, other authorities indicate the public can access such transcripts. *See Mills v. Doyle*, 407 So. 2d 348, 350 (Fla. 4th DCA 1981); Art. I, § 24(a), Fla. Const. We simply hold that section 286.011(1) does not *require* all arbitrations to be open to the public. By reaching a contrary conclusion, the trial court erred.

*Reversed.*

KUNTZ, C.J., and MAY, J., concur.

\*       \*       \*

***Not final until disposition of timely-filed motion for rehearing.***